The opinion of the Court was drawn up by
Shaw C. J.
The grounds of defence in this action, are 1. That this policy attached and took effect, and the risk assumed by it commenced on the 18th of August, 1825, the day on which this policy was underwritten ; that by the law of insurance, whether the insurance be on ship or cargo, the vessel must be in all respects seaworthy, at the time of the inception of the risk ; that this is an implied warranty in the nature of a condition precedent, without compliance with which, on the part of the assured, the policy does not attach and the contract of insurance does not take effect; that in point of fact, this vessel was not seaworthy at the inception of this risk, and so the contract did not take effect.
2. That in addition to the duty of having the ship seaworthy at the commencement of the voyage, or the inception of the risk, it is also equally the duty of the assured to keep her seaworthy, during the voyage, if it is in his power to do so; and if from his neglect, or that of his agents, the vessel becomes unseaworlhy, if she meets with damage which he does not re *233 pair, or loses necessary equipments which he does not replace at the port of refuge, refreshment or trade, if to be obtained, this is negligent navigation, and is an unnecessary increase of the risk, which discharges the underwriter.
3. That if the ship became innavigable and incapable of proceeding on the voyage, without any apparent sea-damage or accident sufficient to destroy or impair a sound vessel, the presumption is, that this proceeded from age and decay, or other defect of the ship ; that an indefinite innavigability is never classed among the perils to which the insurer is liable.
In considering these grounds of defence it appears to the Court, that the defendants’ counsel are not well sustained in their construction of this policy, fixing the time of.the inception of the risk assumed by the policy, on the day the policy was underwritten ; nor of course in the application of the rule of law, in regal’d to the implied warranty that the vessel shall be seaworthy at the time of the inception of the risk.
When did this risk commence ? The policy is on cargo, on board ship Tarquín, now on a whaling voyage. No termini of this voyage are expressed, except the return to Nantucket. But the voyage means the whole voyage from the commencement ; and if not expressed, it is implied, and may be shown by proof of the fact, when the voyage did actually commence, by the sailing of the ship. An outward bound whaling ship, on so long a voyage, must of necessity, probably carry a large amount of provisions, clothing, stores, casks and whaling gear, sufficient in a considerable degree to fill the ship, and to warrant the application of the term cargo. But whether these outfits would be protected by a policy on cargo, is a question not arising in this cause, and one on which we give no opinion. But the oil and other articles, which are the ordinary products of the voyage, and the procuring of which, constitutes its direct object, are undoubtedly included under the term cargo and covered by a policy on cargo.[1] To construe this policy, according to. the argument of the defendants, so as to make the risk commence on the day of its date, it would be necessary to limit the word “ voyage ” to a very *234 small part of the voyage, without any words expressing such limitation, and would render the words “ lost or not lost ” wholly inoperative. The word “now,” we take to be merely descriptive, and designed to identify the voyage. With these views, therefore, we are of opinion that this policy would attach upon the oil, from the time the vessel first began to take whales in the course of this voyage; and had this ship struck a whale on her outward bound passage, we do not perceive why the oil produced would not have been part of the cargo, on the whaling voyage insured. Indeed so much time had elapsed, between the commencement of the voyage and the effecting of this policy, that it is hardly credible that any loss should have happened in the earlier part of it, which would not have been heard of by the owners at that time. But supposing there was no misrepresentation or concealment affecting the case, we see not why this policy would not cover any loss, that might have happened, at any time anterior to the date of the policy, and after any oil was taken in.[1]
If this is the true construction of the policy, and the effect of this contract of insurance is to relate back to the. time of the commencement of the voyage, then the only point of inquiry in relation to the question whether the policy attached, is, whether the ship was seaworthy at the commencement of the voyage. If she was not at that time tight, staunch and strong, and in all respects manned, fitted and well equipped for the contemplated whaling voyage, the implied warranty of seaworthiness was not complied with, and that being a condition precedent, the policy did not attach. Upon this point some question was made at the trial, but the weight of evidence preponderated in favor of the assured ; at all events, there was no such evidence of unseaworthiness at that time, as to warrant the Court in setting aside the verdict.
Whether if a policy were effected in terms, so as to take effect on a particular day, in the latter part of a long whaling voyage in distant seas, and intended to cover the latter section of such a voyage, where it must be well known to both parties that the ship, from the nature and length of service, is likely *235 to be much deteriorated, the rule of seaworthiness as a condition precedent would apply, may be a matter of some doubt. The question is hinted at in the remarks which fell from Lord Mansfield, in March v. Pigot, 5 Burr. 2804, in relation to the decision before made in Mills v. Roebuck, in regard to the Mills frigate, of which there is no printed report except in the works of Park and Marshall. Lord Mansfield there said, “ the insured ought to know whether his ship was seaworthy or not, at the time when she set out upon her voyage. But how should he know the condition she might be in, after she had Deen out a twelvemonth ? ” Whether this was the true ground of the decision in favor of the assured in the case of Mills v. Roebuck, or whether it was decided as supposed by Marshall, on the ground of the form in which the point was presented by a demurrer to the plaintiff’s evidence, does not distinctly appear.[1] The general rule that the ship must be seaworthy, at the inception of the risk, in order to make the policy attach, and charge the underwriter with the risk, probably would be applied in this, as in all other cases, being a necessary incident to the contract. As stated by Mr. Justice Lawrence m the case of Christie v. Secretan, 8 T. R. 192, “ The warranty of seaworthiness is implied from the nature of the contract of insurance. The consideration is paid, in order that the owner of a ship which is capable of performing her voyage, may be indemnified against certain contingencies ; and it supposes the possibility of the underwriter’s gaining the premium ; but if the ship be incapable of performing her voyage, there is no possibility of the underwriter’s gaining the premium ; and if the consideration fail, the obligation fails.”
But the rule would no doubt be applied, with great liberality of construction, in the case supposed ; and what would be a condition of things in such a stage of the voyage sufficient to satisfy the character of seaworthiness, would fall far short of that required at its commencement. Seaworthiness applies to the intended uses and purposes, to which the vessel is to be applied. So', whilst a ship is insured at a port, a state of repair and equipment is sufficient, which would be unseawor *236 thiness for going to sea.[2] But she must be in such a condition as t0 be in reasonable security. If she be a mere wreck, the policy never attaches. Parmenler v. Cousins, 2 Camp. 235 ; M'Lanahan v. Universal Ins. Co. 1 Peters’s S. C. R. 184 ; Taylor v. Lowell, 3 Mass. R. 348. The same .consideration is distinctly implied in the foregoing remarks of Mr. Justice Lawrence, where a ship in a state incapable of performing the voyage, is put in contradistinction to seaworthiness ; thereby considering a vessel capable of performing her voyage, as seaworthy to the purpose of being the subject of a contract of insurance. This she may be, though very far from that condition of complete equipment, necessary to constitute seaworthiness, for the commencement of a long voyage, in distant seas, far remote from places of repair, supply and relief. So m a late case, where a vessel engaged in the southern whale and seal fishery, with liberty to chase and capture prizes, was msured in August 1807, from the 1st of August of the preceding year, which is similar to the case supposed, although at the time the insurance attached, she was not competent to pursue all the purposes of her voyage, her crew being reduced by death and casualties, yet if she had a competent force to pursue any part of her adventure, and could be safely navigated home, Lord Chief Justice Gibbs held her to be seaworthy. Hucks v. Thornton, 1 Holt, 30.
2. The second ground of defence is, that in addition to the duty of having the ship seaworthy at the commencement of the voyage, or inception of the risk, it is also the duty of the assured to keep her seaworthy during the voyage, if in his power to do so, otherwise the underwriter is discharged.
Of cours-e it is not contended, that the owner is bound to keep the ship seaworthy, to the effect that the underwriters are discharged at the time of her becoming unseaworthy ; for the very disasters which disable and render her unseaworthy, are those against which the underwriters engage to indemnify. The proposition then is, that the underwriters are discharged from and after the time that it was in the power of the ownei to repair and make her seaworthy, and he has failed to doeso
*237 That the owner of a ship is bound to keep his ship in a competent state of repair and equipment, during the voyage ; that if damage is sustained in her hull, sails or equipments, he is bound to repair and supply them as soon as he conveniently can ; that, if the crew become disabled by the death, sickness or desertion of men, he shall as soon as practicable procure others ; and so that in a certain sense he is bound to keep his ship seaworthy, is no doubt true. But what shall be the consequence of a failure and breach of duty in this respect, seems not to be so well settled. Are each and all of these requisites included in the implied warranty of seaworthiness, regarded as strict conditions precedent, to the effect that if not complied with, on the part of the owner, the contract of insurance becomes wholly annulled ? Or are they obligations and duties binding on the owner, and if not performed on his part, and if in consequence of such non-performance a loss happens, or by any reasonable probability may be ascribed to that cause, the effect will be, that such loss will fall upon the assured, and not upon the underwriter ? If it is contended that a vessel must be seaworthy, for the remainder of the voyage, in all respects, at every stage of the voyage, as well as its commencement, and at her departure from every port of refuge or refreshment, using the term seaworthiness in this case in its technical sense, as an implied warranty operating as a condition precedent, so that if not complied with the underwriters would be wholly discharged from their contract, it is certainly a proposition which would require great consideration. The effect would be, that if a vessel were to sail from an intermediate port, without a pilot, where, by the course of navigation, a pilot ought to be employed, and two years after be lost by capture ;[1] or if she were to sail without sufficient anchors, and after-wards in the progress of the voyage be struck with lightning and burnt, although the defect which constituted unseaworthiness, did not, and by no possibility could contribute to the loss that ensued, still the underwriters would not be liable. It wmuld seem to be more consistent with the nature of the contract, the intent of the parties, and the purposes of justice and *238 policy, to hold, that after the policy has once attached, the imP^ec^ warranty should be so construed, as to exempt the underwriter from all loss or damage, which did or might proceed from any cause, thus warranted against; but to hold him still responsible for those losses which by no possibility could be occasioned by peril increased or affected by the breach of such implied warranty. In a recent case, where a ship insured at and from a port, sailed on her voyage in an unseaworthy condition, by being overloaded, but the defect Was discovered before any loss accrued, and the vessel put back and part of the cargo was discharged, by means of which she was rendered seaworthy, and afterwards a loss happened, in no degree attributable to her having been overladen and unseaworthy when she sailed, it was held that the underwriters were liable for such loss. The circumstance that the insur anee was at and from the port, so that the policy attached and the risk commenced before sailing, was not expressly relied upon, or made the avowed ground of the decision ; but such was the fact, and would seem to reconcile it with the course of decisions. Weir v. Aberdeen, 2 Barn. & Ald. 320. A similar case occurred in Pennsylvania. Garrigues v. Coxe, 1 Binn. 592.
But this question does not necessarily arise in the present case, and therefore the Court are not called upon to give any definitive opinion upon this point. The loss of the Tarquín was occasioned by foundering at sea in consequence of springing a leak. If this was, or might be, attributable to her sailing from Pernambuco in such a state, owing to the want of repairs and supplies, which it was the duty of the owner to furnish, so that she was not tight, staunch, and strong, and reasonably well fitted to prosecute and complete the voyage insured, then it is obvious that the leak, and consequent loss, were, or for aught that appears might be owing to this defective state of the ship, and so whether the contract were discharged or not, the underwriters would not be liable. If the vessel was technically unseaworthy and the implied condition on the part of the assured, not complied with, the underwriters would be discharged because the contract was no longer in force when the loss happened ; but if not technically unseaworthy, still the loss hap *239 pened or migh- have happened for want of repairs which the owner was bound to make, a loss against winch the underwriters were not bound to indemnify, and so they could not be held liable, because their contract was not broken. Had the loss arisen from capture, or other cause wholly independent of the defective state of the ship, the case would have presented a different question.[1]
3. In regard to the third position taken by the counsel for the defendants, the Court can perceive no sound objection to the principle itself, or to the accuracy with which it is stated. If a ship become innavigable and incapable of proceeding on her voyage without any apparent sea-damage or accident sufficient to destroy or impair a sound vessel, the presumption is, that this proceeds from age and decay, or other defect of the ship. The insurer is responsible only for the extraordinary dangers and unforeseen perils to which navigation is subject, and not for the common and ordinary perils, to which vessels are necessarily exposed, by the nature of the uses in which they are employed. It is conceded on the part of the plaintiff, that if a ship becomes unseaworthy after the commencement of the risk, through the fault or negligence of the assured, or his agents, this discharges the underwriter.
There can be no doubt, that after a vessel has met with such accidents, disasters and losses as to weaken and disable her, or by age and decay, worms, wear and tear arising from long service, and the ordinary pressure and action of the winds and sea, she has become incapable of proceeding with reasonable safety, it is the duty of the owner to procure the necessary repairs and supplies as soon and as effectually as he reasonably can do so, under the circumstances in which the ship is placed. If in a remote sea, or at a desolate or savage island, a temporary expedient, however inadequate to the *240 wants of the ship, must be sufficient, being the best which can be resorted to. But if a vessel in such a condition reaches a port where repairs and supplies can be obtained, and leaves such port without obtaining them, it is a fault and instance of negligence on the part of the owner. If the ship be afterwards lost, by a cause which may be attributable to the insufficiency of the ship, and which cannot be clearly traced to some independent and wholly distinct cause, as capture or fire, the underwriters are discharged, as well on the ground that the loss arose from the fault and negligence of the ship-owner, as from ordinary perils or internal decay and defects of the ship, which are perils not insured against.
But the principal question between the parties in this part of the case, is, what are the legal presumptions, and on whom is the burden of proof.
The plaintiff insists that the presumption of law is, that the ship is seaworthy, and the insurer must prove a want of seaworthiness in the vessel insured, if he would thereby avoid the contract, and relies on a remark to that effect in Taylor v. Lowell, 3 Mass. R. 347. Again, after considering and applying the evidence, the plaintiff’s counsel says, that to sustain the motion for a new trial, there must not only have been no evidence of seaworthiness, on the part of the plaintiff, but there must have been positive proof of unseaworthiness introduced by the defendants, or the existence of such circumstances as would render the conclusion inevitable, that she was unseaworthy. On the contrary, the defendants contend that the bur-then of proof is upon the plaintiff.
There is no doubt we think, as it was above stated by Mr. Justice Sewall, in delivering the opinion in Taylor v. Lowell, that where unseaworthiness of the ship at the inception of the risk, is relied on as a non-compliance with an implied warranty and condition precedent, either to avoid a loss, or to establish a claim for a return of premium, the burthen of proof is upon the insurer, the presumption of law being that the ship was seaworthy. But where the proof shows, in point of fact, that the vessel sprung a leak by the starting of a butt or other internal defect, without any accident or stress of weather, but by the ordinary pressure of the cargo, and the action of the wind *241 and sea, the ordinary presumption of seaworthiness is rebutted; Talcot v. Com. Ins. Co. 2 Johns. R. 124 ; and it is immaterial whether these facts are shown on the part of the insurer, or whether they arise out of the evidence adduced in proof of the loss, by the assured.
But where the question is, whether the loss has arisen from any of the perils insured against, the burthen of proof, as in other cases, is upon the plaintiff. Where a vessel has sailed, apparently in a seaworthy condition, and never been heard from, as such an event is of rare occurrence, and the extraordinary perils and dangers to which she is exposed are very great, the law, in the absence of other proof, will presume that the loss was occasioned by some of those perils. But if the officers and crew are saved and return to give an account of the actual loss as it occurred, and if it appears from the proof thus furnished, and the circumstances attending, that the vessel was lost by springing a leak and foundering in moderate weather, the presumption is that this arose from weakness and internal defect; and the burthen of proof is upon the plaintiff, to show that it arose from stress of weather, or from collision, or other external injury of an extraordinary character, coming under the denomination of perils of the sea. The presumption that the loss arose from internal defects and decay, is much strengthened, by the length of time that the vessel has been at sea, and former manifestations of weakness and decay by leaking or otherwise.[1]
We think, therefore, the important questions of fact submitted to the jury were
Whether the Tarquín had become injured, decayed and weakened by long service, by ordinary wear and tear, exposure to worms, or other causes of deterioration, prior to her arrival at Pernambuco, so that she was not then reasonably tight, staunch and strong, and in a condition of reasonable safety to complete her voyage to the United States without repairs ; — and if not,
*242 Whether such repairs could have been obtained at Pernambuco, and whether they were obtained ; — if not,
Whether the cargo of oil could or could not have been transshipped and forwarded by some other vessel; —
Whether or not the vessel foundered at sea, in moderate weather, or without being exposed to any gale of wind or other extraordinary stress of weather, by springing a leak, from starting a butt or other internal defect; — or
Whether such leak was occasioned by a sword fish, by striking any floating object, or by any other unusual or extra ordinary accident.
These were the questions submitted to the jury. We have carefully examined the evidence upon these points, most of which is in writing ; and without recapitulating it, our opinion is, that there was no sufficient evidence to warrant the jury in finding, that the Tarquin was tight, staunch and strong, and in a reasonably safe and fit condition to prosecute her voyage on her arrival at Pernambuco, or that repairs could not be made and supplies obtained there ; that they were not warranted, by any evidence in the case, in finding that the loss was occasioned by stress of weather, or by collision or other external injury, or that this loss was occasioned by the perils insured against. Without recapitulating the rules which govern the Court in granting new trials, where a verdict is complained of as against evidence, or the limitations and restraints under which they ought to be granted, the Court are all of opinion, that in the present case, the Jury either mistook the nature of their province and duty, or misapprehended the force and effect of the evidence, and that justice requires that a new trial be granted.

 See Rogers v. Mechanics Ins. Co. 1 Story’s R. 603.

 See Hancox v. Fishing Ins. Co. 3 Sumner, 132.

 See 1 Phil. on. Insurance (2d ed.) 328.

 See Merchants Ins. Co. v. Clapp, ante, 56.

 See McMillan v. Union Ins. Co. 1 Phil, on Ins. (2d ed.) 337.

 See Starluck v. N. Eng. Mar. Ins. Co. 19 Pick. 198; Deblois v. Ocean Ins Co. 16 Pick. 303; 1 Phil. on Insurance (2d ed.) 330; Copeland v. N. Eng Mar. Ins. Co. 2 Metc. 431; Hazard, v. N. Eng. Mar. Ins. Co. 1 Sumner, 218 Amer. Ins. Co. v. Ogden, 15 Wendell, 532; S. C. 20 Wendell, 287; Peters v Phœnix Ins. Co. 3 Serg. & R. 25; Prescott v. Union Ins. Co. 1 Wharton, 399; Holdsworth v. Wise, 1 Mann. & Ryl. 673; Hollingsworth v. Brodrick, 7 Adol. & Elds, 40.

 See Powers v. Russell, 13 Pick. 69; Marlin v. Fishing Ins. Co. 20 Pick. 389; Prescott v. Union Ins. Co. 1 Wharton, 406; 2 Phil, on Insurance (2d ed.) 757 ; Cort v. Delaware Ins. Co. 2 Wash. C. C. R. 375.