THE CHICAGO PACKING AND PROVISION COMPANY

*v.*

SELAH P. TILTON.

1. WARRANTY—*when implied on sale.* Where a person, as manufacturer, sells a commodity by a particular and well known market description, which commodity is not present at the time and place of the trade, and is not examined or seen by the purchaser, the law will imply a warranty on the part of the seller that the commodity is of a fair merchantable quality, corresponding to the description under which it is sold, and the same rule applies where the seller holds himself out as a manufacturer of the commodity sold, or sells under circumstances leading the purchaser to believe him to be selling as a manufacturer.

2. But if the vendor professes to act in making the sale as a mere dealer in produce, and not as a manufacturer, or professes to be selling for other parties and not for himself, or sells upon the board of trade, where it is a rule, universally recognized, that the buyer of produce taking it without inspection takes the same at his own risk, no warranty will be implied as to the quality of the goods sold.

3. SALE—*presumption whether a person selling does so as a manufacturer.* A party dealing with a corporation engaged in business as a manufacturer, and selling its manufactured goods, and whose name gives no suggestion to the contrary, has a right to assume, when it offers such goods for sale with nothing to suggest to the contrary, that it proposes to sell as a manufacturer and not as an ordinary dealer in the market, and unless the proof shows satisfactorily that plain notice of its acting in a different character was brought home to the party dealing with such corporation, it can not insist on being treated other than as a manufacturer; and in such case, a rule of the board of trade would seem to have no application which would make the sale without a warranty as to quality.

4. INSTRUCTION—*must not ignore evidence tending to prove a fact.* Where there is evidence tending to prove a fact having an important bearing upon the law of the case, even though strongly contradicted, an instruction is erroneous

which ignores the existence of such fact, and taking its consideration from the jury.

5. Custom—*how far question of fact or law.* Whether a given custom does or does not exist, or is not universally recognized in a particular locality, is a question of fact for a jury; but whether a given custom be valid or invalid, is always a question of law for the court, and should not be left to a jury.

6. Board of trade—*when one not a member is bound by its rules—estoppel.* A party frequently visiting a board of trade on a visitor's ticket, and who, when there, undertakes to exercise the rights of a member of the board, and permits another to deal with him as such, is estopped to deny that he is a member, and thereby relieve himself from the responsibilities resting upon its members, but he will be bound by its rules and customs, the same as if he were in fact a member.

7. Same—*reasonableness of rule in regard to sales and warranty.* A rule or custom of the Chicago Board of Trade, that in cash sales of produce or provisions, giving the buyer the privilege of having them inspected at his own expense, and if he accepts the same without inspection, he takes at his own risk as to quality, is not an unreasonable one in a certain class of cases, as, where two persons are each speculating in produce, buying with a view of selling at a profit, or selling to realize profit, or avoid apprehended loss, where the vendor does not seem to have any better means of knowledge of the quality of the article sold than the vendee has. But where the vendor apparently occupies a position where he is reasonably supposed to know the condition and quality of the goods sold, and the vendee might reasonably rely upon such supposition, the rule would be unreasonable and should not apply.

8. Where a manufacturer sells goods in his line of business as such, or under circumstances where the vendee is justified in believing him to be selling goods of his own manufacture, the rule of the board of trade will have no application to prevent a warranty of their merchantable quality, as implied by the law.

Appeal from the Superior Court of Cook county; the Hon. Joseph E. Gary, Judge, presiding.

This is an action, brought by appellee against appellant, for a breach of warranty in the sale of 200 barrels of mess pork, made by appellant to appellee in October, 1874. Appellee recovered judgment for damages in the Superior Court of Cook county, and defendant appeals to this court.

The proof shows, that the sale was made on the board of trade; that the sellor was a member of the board, was also a manufacturer of mess pork, and also was in the habit of buy-

ing and selling pork on the board of trade, on its own account and also as a commission merchant. It also appears, that appellee was not a member of the board, but had occasionally bought and sold on the board through a broker, and sometimes in person. He had a visitor's ticket, by which he was permitted, at will, to be present in the trade room. By the rules of the board, he was not permitted to trade there by reason of such ticket. It further appears, that before this purchase appellee had traded while present at business hours upon the board, and had bought pork in that way from appellant, and that the agent of appellant supposed that appellee was a member, had no notice to the contrary, and dealt with him upon that supposition.

It appears, from the printed rules of the board, given in evidence, that inspectors of provisions were appointed by the board, who were in the habit of inspecting provisions, when called on, for which a fee was paid to the inspector.

Testimony was given tending to prove that it was the universal custom, in cash sales of produce or provisions, that the buyer had the privilege, at his own expense, to have any article purchased inspected, and if he accepted the same without inspection, he took it at his own risk. Other evidence tended to prove that this custom was not universal, and that in some such cases, where no inspection was had and the article sold was, after delivery, found to be below the merchantable standard, the sellor was required to make compensation.

This was a sale of 200 barrels of mess pork, then in appellant's warehouse, and not seen by the buyer. The sellor, at request of the buyer, shipped the pork to Montreal (without inspection and without any examination by the buyer) by rail, and on production of the railroad receipts the buyer paid the price. On inspection at Montreal, about 70 barrels of the lot were found not to be standard or merchantable pork. It also was shown, that although this pork was manufactured by appellant, it was in fact the property of another party at the time of the sale, in whose behalf the sale was made by appel-

lant, as commission merchant.  Evidence was given tending to show that appellee had notice that appellant did not own the pork, and that appellant was not acting in its own behalf in making the sale, and there was evidence tending to prove that appellee had no such notice.

Appellee produced receipted bills of the sale, in the following words:

*Chicago, Oct.* 17, 1874.

S. P. TILTON, Esq.

To THE CHICAGO PACKING AND PROVISION CO.          *Dr.*

Packers of Pork and Beef, and Dealers in Provisions.  Packing Houses at Union Stock Yards, and Lumber st., cor. 22d.

S. A. KENT, *Pres't.*  B. P. HUTCHINSON, *Vice-Pres't.*  IRA S. YOUNGLOVE, *Sec'y.*

Office, 153 Monroe street, Kent's Building.

50 bbls. mess pork (C. P. & P. Co.) @ $19.75  - - -  $987.50

*Chicago, Oct.* 16, 1874.

S. P. TILTON, Esq.

To THE CHICAGO PACKING AND PROVISION CO.          *Dr.*

Packers of Pork and Beef, and Dealers in Provisions.  Packing Houses at Union Stock Yards, and Lumber st., cor. 22d.

S. A. KENT, *Pres't.*  B. P. HUTCHINSON, *Vice-Pres't.*  IRA S. YOUNGLOVE, *Sec'y.*

Office, 153 Monroe street, Kent's Building.

150 bbls. mess pork (C. P. & P. Co.) @ 19.75  - -  $2962.50
                                                      987.50
                                                     _____
                Paid.                                $3950.00
                          C. P. & P. Co.

Appellee recovered the difference between the market value of a like quantity of merchantable mess pork at the time of the sale and the actual value of this pork when shipped.

The court, among other matters, at request of appellee, instructed the jury as follows:

"1.  The jury are instructed, as a matter of law, that if a person sells a commodity by a particular and well known market description, which commodity is not present at the time

and place of the trade, and is not examined or seen by the purchaser, then, and in such case, the law implies a warranty on the part of the sellor that the commodity is of a fair merchantable quality, corresponding to the description under which it is sold ; and if the defendant sold to the plaintiff 'mess pork,' and the words 'mess pork' meant pork of a certain kind, then the defendant was bound to deliver pork of that kind.

"2.   If the jury believe, from the evidence, that the pork in question, or any substantial portion of the same, was of a quality inferior to what is universally known to the trade as 'mess pork,' or was so insufficiently and improperly cured and packed as to be tainted, sour and unmerchantable, and of inferior value to a sound, merchantable article of mess pork, whereby the plaintiff suffered damages, the plaintiff is entitled to recover such damages of the defendant to the extent proved, if any damages have been proved."

"6.   The jury are instructed that a rule, custom or usage of the board of trade, intended and relied upon to relieve a person from the obligations of common honesty and fair dealing, would be in contravention of public policy, and could not be successfully relied on to avoid the effects of a breach of warranty in a court of law."

The appellant asked instructions which the court refused to give.   They are as follows :

"1.   The jury are instructed, on the part of the defendant, that upon the sale and delivery of 200 barrels of 'mess pork' to the buyer, there is no warranty on the part of the sellor to the buyer—where the buyer had an opportunity of inspecting the same upon delivery—that it was sound and merchantable, unless the sellor, by express words, warranted the same to be such.

"2.   If the jury believe, from the evidence, that the defendant, on the 17th day of October, 1874, sold and delivered to the plaintiff the two hundred barrels of pork in controversy,

upon the market, without any express warranty, and with an opportunity of inspecting before receiving it, in that case the law is that the plaintiff takes the same at his own risk, and without any warranty on the part of the defendant that the same was sound and merchantable.

"3. If the jury believe, from the evidence, that the plaintiff purchased from the defendant the pork in controversy upon the Board of Trade of Chicago, and that said board, at the time, had rules and regulations concerning such purchases and sales, they are instructed that such rules and regulations became part of and entered into the contract of said purchase and sale, unless there was an express stipulation between the parties to the contrary.

"4. If the jury believe, from the evidence, that when the plaintiff bought the pork in controversy it was a rule and custom of the said board of trade that the buyer of pork took the same at his own risk, as to quality, unless he demanded an inspection of the same before delivery; and if they should further believe, from the evidence, that the plaintiff bought and received said pork on said board of trade, without demanding an inspection thereof, according to said rule and custom, then, and in that case, he took the same at his risk, and without any warranty on the part of the defendant.

"5. The jury are further instructed that the term 'Mess Pork,' as used on the Board of Trade of Chicago and in the Chicago market, does not import a warranty of quality of the pork, but simply denotes the particular cuts of the hog, and the manner of cutting, salting and packing the same, as defined by the rules of the Board of Trade of Chicago.

"That the rules of the board of trade define 'Mess Pork' as follows, viz:

"'*Mess Pork.*—Mess pork shall be cut and packed from the sides of well fatted hogs, in strips; the hog to be first split through the backbone, or if split on one side an equal proportion of hard and soft sides (as they are termed) must be packed, properly flanked and not backstrapped, one hundred and nine-

ty-six pounds of green meat, numbering not over sixteen pieces, including the regular proportion of flank and shoulder cuts; four layers placed on edge, without excessive crowding or bruising, must be packed into each barrel, with not less than forty-five pounds of good coarse domestic, or forty pounds of good coarse foreign, salt, and filled up with good clear brine, as strong as salt will make it. Pork to be cut reasonably uniform in width. On all pickled hog product the packer's name, location, date of packing, and number of pieces in each package, must be branded on the head at the time of the packing, with a metallic brand, marking-iron or stencil.

" 6. If the jury believe, from the evidence, that the plaintiff went upon the board of trade and made contracts and traded with the members, he is bound by the rules, regulations and customs of said board, the same as if he had been a member thereof, and in that case will not be permitted to plead his ignorance of said rules, regulations and customs, as a reason for not being bound by them."

Messrs. McCoy & Pratt, for the appellant.

Messrs. Merriam & Alexander, and Messrs. Perkins & Robinson, for the appellee.

Mr. Justice Dickey delivered the opinion of the Court:

The first instruction given at the request of appellee, ought not to have been given without qualification. It seems to ignore the proof tending to show that appellant professed to act, in making the sale, as a mere dealer in produce, and not as a manufacturer, and professed to be selling for other parties, and not for itself, and it ignores the proof tending to show that it was the rule, universally recognized on the board of trade, that the buyer of produce, taking it without inspection, takes the same at his own risk. It is insisted by appellee, that other proofs in the case disprove these propositions. There is, undoubtedly, evidence tending very strongly to contradict both these positions, and we are not prepared to say that the weight

of the evidence does not in our judgment show that appellee had a right to regard appellant as a mere manufacturer, making sale of its own goods, but that did not authorize the court to take that question of fact from the jury.  The *general* rule of law is correctly stated in that instruction, but there being proof in the case tending to show that, on the board of trade, universal custom has established another and different rule, the general rule should not have been laid down as the absolute law of the case, except upon proper hypothesis.

The second instruction given is faulty in the same respect.

The sixth instruction given seems to submit to the jury the question whether the alleged rule, custom or usage of the board of trade is, or is not, one " intended to relieve a person from the obligations of common honesty and fair dealing," or is, or is not, " in contravention of public policy." Whether a given custom does or does not exist,—is or is not universally recognized in the locality in question,—are matters of fact for a jury, but whether a given custom be valid or invalid, is always a question for the court.

We also think the court erred in refusing the sixth instruction asked by appellant.  A party visiting the board of trade frequently on a visitor's ticket, and who, when there, undertakes to exercise the rights of a member of the board, and permits another to deal with him as such, is estopped to deny that he is a member, and thereby relieve himself from the responsibilities which would rest on members of the board dealing in the same manner.  Appellee can not be permitted to escape the responsibilities of the role he undertook to play.  In considering his rights in this case, he should be regarded in all respect as though he were at the time a member of the board.

The real question in the case is, ought he to recover, assuming him to have been (what by his conduct he professed to be) a member of the board.  The alleged rule of the board of trade does not seem to be an unreasonable rule, if confined to a certain class of cases.  Where two parties are each speculating in produce, buying with a view of selling again at a profit, or selling to

realize profit, or avoid an apprehended loss, where the vendor does not seem to have better means of knowledge as to the condition or quality of the article sold than the vendee has, it seems very reasonable that if the vendee (having the means of inspection) chooses to accept the goods without inspection, his mouth should forever after be closed. But where the vendor apparently occupies a position where he is reasonably supposed to know the condition and quality of the goods sold, and where the vendee might reasonably rely upon such supposition, it would seem a very unreasonable rule that he shall not complain where he has so relied in vain.

It would seem hardly probable that the charter or articles of incorporation of appellant (a corporation bearing the name this does) are such as to authorize it to enter the market as a commission merchant, although it may be so. The production of the charter or articles would settle that question. It is not necessary for us to decide at present what on this question is the presumption, in the absence of direct proof. It is plain, however, that a party dealing with a corporation, engaged in business as a manufacturer, and in selling its manufactured goods, and whose name gives no suggestion to the contrary, has a right to assume, when it offers such goods for sale with nothing to suggest the contrary, that it proposes to sell as a manufacturer, and not as an ordinary dealer in the market, and unless the proof shows satisfactorily that plain notice of its acting in a different character was brought home to the party dealing with such corporation, it can not insist on being treated as other than a manufacturer, and in such case it would seem the supposed rule of the board of trade would have no application.

It is also insisted, that the court erred in refusing the 1st, 2d, 3d, 4th and 5th instructions asked by counsel for appellant.

These instructions, as drawn, are too sweeping. They each ignore the proof tending to show that the appellee had a right to assume that appellant was selling as a manufacturer, where there is some proof to the contrary.

For the errors indicated the judgment must be reversed, and the cause remanded for a new trial.

*Judgment reversed.*