# CHARLESTON

## COBB *v.* DUNLEVIE.

Submitted January 17, 1908.   Decided January 28, 1908.

1. EVIDENCE—*Res Gestae—Letters.*

   A letter which is a link in the chain of negotiations between the principals to a contract of sale is admissible as part of the *res gestae*, regardless of the fact that it contains matters of hearsay. (p. 401.)

2. TRIAL—*Objections to Evidence.*

   Where such letter is offered in evidence and contains proper matter to go in evidence, objection on the ground that it contains other matter of hearsay should be specific; otherwise, the objection will not be ground for its exclusion.   (pp. 401, 402.)

3. EVIDENCE—DOCUMENTARY—*Recorded Instrument.*

   The record of a deed or other instrument, or a certified copy therefrom, is not admissible in evidence against a party thereto as to whom the same has not been lawfully admitted to record as provided by sections 2 and 3, chapter 73, Code.   (p. 404.)

4. BROKERS—*Action for Commissioners—Evidence.*

In the trial of an action by a real estate broker to recover commissions on a sale of real estate, in which the evidence is conflicting as to whether the parties had stipulated for the rate of compensation, evidence of a prior contract between the same parties for a sale of the same property and of the compensation therein agreed to be paid by way of commissions is competent upon the question of compensation involved.   (p. 405.)

5. APPEAL—*Review—Discretion of Court.*

Section 12, chapter 131, Code, respecting the carrying from the bar by the jury of depositions or other papers read in evidence, leaves the subject in the sound discretion of the court; and, unless such discretion is clearly abused, the action of the court will not constitute reversible error.   (p. 405.)

6. TRIAL—*Instructions—Theories of Case.*

An instruction for plaintiff, on his theory of the case, which does not correctly state the terms of the contract alleged and proven and on which he sues, or limits the theory of the defense to a narrower scope than that covered by the evidence, if given, will constitute reversible error.   (pp. 406, 407.)

7. SAME—*Inconsistent Instruction.*

A bad instruction will not be cured by a good one inconsistent therewith.   (p. 407.)

8. SAME—*Assumption of Facts.*

In an action of *assumpsit* for brokerage commissions, an instruction which assumes the absence of a special contract and the existence of an established custom respecting such commissions, with reference to which the parties must be presumed to have contracted, is erroneous; the fact of the existence of such custom being one which should be submitted to the jury under proper instructions.   (p. 408.)

9. SAME—*Weight of Evidence—Credibility of Witnesses.*

An instruction which tells the jury that, if they believe under all the evidence any witness has knowingly and wilfully testified falsely as to any material fact in the case, they may disregard the whole of his testimony, or give it such weight on the other points as they may think it entitled to and tells them that they are the exclusive judges of the weight of the testimony, is proper.   (p. 408.)

10. CONTRACTS—*Acceptance by Mail.*

Where one uses the mail to communicate a proposition, the posting of a letter of acceptance makes the acceptance complete the moment the letter is mailed, unless the offer is so qualified as to require receipt of the letter to constitute acceptance; but, in order to bind the proposer, such acceptance must be unconditional.   (p. 409.)

11. BROKERS—*Right to Commissions—Failure to Obtain License.*
  Points 1 and 2 of the syllabus in *Ober* v. *Stephens*, 54 W. Va. 354, approved. (p. 409.)

Error to Circuit Court, Pocahontas County.

Action by W. H. Cobb against E. V. Dunlevie. Judgment for plaintiff. Defendant brings error.

*Reversed.*

HENRY GILMER and BROWN, JACKSON & KNIGHT, for plaintiff in error.

PRICE, OSENTON & McPEAK, and SAMUEL T. SPEARS, for defendant in error.

MILLER, JUDGE:

In *assumpsit*, there was a judgment in favor of the plaintiff on the verdict for $37,653.96. The cause of action was for commissions alleged to be due the plaintiff on a sale of defendant's timber lands and saw-mill plant at Dunlevie, W. Va., to the Flint, Irving & Stoner Company, of Pittsburg, at the aggregate price of $726,910.44, pursuant to a contract of employment alleged to have been made with the defendant in February, 1906. The declaration does not allege any agreement as to the rate of commissions, but that the defendant promised to pay a reasonable compensation. The bill of particulars charges the defendant with commissions on the purchase price at the rate of 5 per cent., aggregating $36,345.52, which, with interest from the date of sale, is the sum found by the verdict.

On the trial, numerous exceptions were taken to rulings of the court on admission and rejection of evidence, giving and refusing of instructions, and the action of the court on the motion of defendant for a new trial. It was not controverted that the plaintiff had a contract of employment with the defendant to sell the property. This fact was established, not only by the oral testimony but by correspondence adduced between plaintiff and defendant, substantially as alleged. But the defense was that the plaintiff had not been the procuring cause of the sale, and hence was not entitled to commissions. This was the main issue, and after

it, if determined in favor of Cobb, was the question of the amount of his compensation.

The plaintiff was a real estate broker at Elkins, and had employed to assist him the firm of Wilson & Shipman, who in turn had employed one P. S. Dunkle to assist them. Dunkle on April 7, 1906, met E. W. Echart, an agent of the purchaser, at Glady, W. Va., and learned that he represented the Flint, Irving & Stoner Company and was then looking after timber propositions. As a result of this meeting, Echart went on the following day with Dunkle to see Wilson, who arranged with Echart to go with him and Dunkle to see the Dunlevie property the following Monday morning. After thus going and seeing Dunlevie, negotiations were concluded in the sale by Dunlevie of his property to Echart's company on April 17, 1906.

We have concluded errors were committed in the trial prejudicial to the defendant, requiring reversal of the judgment and the awarding of a new trial. The facts will sufficiently appear in the discussion of the assignments of error.

The first error to be noted of which the defendant complains is the refusal to admit in evidence the letter of Flint, Irving & Stoner Company to Echart, their agent, of April 5, 1906, received by him on his arrival at Elkins April 6th. This letter is long; but it in substance, after telling him that since he left a lumber dealer at Pittsburg, who had been in West Virginia and seen the Dunlevie property and learned it was for sale, had stated that he considered it the finest proposition in the state, but that the dealer referred to did not know negotiations were already pending between Dunlevie and the company, advised Echart that, notwithstanding this report, he had better follow out the instructions given him before leaving, and then went on to detail the order in which he should visit several properties, and said: "After looking at those several pieces of timber, you might run up to Dunlevie and take a look at his proposition, but do not go into the matter of price, terms, etc., as I have had this matter on discussion with him for three or four weeks myself. As I advised you, when there it would be well for you to spend three or four days or more on the timber, so as to grasp every feature of the situation; look

over the railroad, the mill, houses, and everything in con-
nection with the operation.   You can tell when you get
through with the Taylor tract whether it would be advisible
to go to Dunlevie first, instead of going to Marlinton.
We think probably you had better to do this, as this does
look to me to be better than anything we have heard of, if a
satisfactory price can be obtained."

It is admitted on behalf of the plaintiff that the portions
of this letter giving instructions to Echart as to the lumber
operations to be visited by him, and especially that portion
in regard to his visiting the Dunlevie property, were perti-
nent and proper evidence.   But the action of the court in
ruling it out is intended to be justified, first, - upon the
ground that the letter was not sufficiently identified; second,
that it contained statements and recitals that were inadmis-
sible because hearsay; and, third, that, inasmuch as the
witnesses Flint and Echart were permitted to testify in re-
gard to Echart's instructions, the rejection of it was not
prejudicial.   In this we cannot concur.   We think the letter
was sufficiently identified by the witness Echart.   He had
previously testified to having received a letter of that date
from his company.  Subsequently, on being shown the letter in
question and asked to state if it was the one he had
spoken of as receiving at Elkins, objection was sustained,
and the question not answered; but the letter was offered
and rejected.   It showed upon its face, when offered, the
relevancy of the matter contained therein.   The offer of it
was equivalent to a statement by counsel of what he pro-
posed to prove by the witness.   The letter bore the same
date as the one to which he had previously referred.   We
think this was a sufficient identification.   Nor do we think
the objection on the ground of hearsay well founded.   The
bare fact that such a letter of instruction was written was
a pertinent fact.   The hearsay matter was not particularly
material, except as explaining to Echart the subsequent
matters of instruction; and, besides the manner of instruc-
tion relating to the Dunlevie property, the letter was part
of the *res gestae*, and one of the links in the chain of nego-
tiations between the principals to the contract of sale.   If
objectionable on the ground of hearsay, the objection should
have been specific.   We have recently held, in *State* v. *Hood*,

not yet reported, respecting admissibility of a dying declaration containing hearsay matter, that, because the objection was general and not applied specifically to the hearsay matter, no error was committed in its admission. We see no reason for distinction in the rule where a document like the one here in question is rejected. It is true Flint and Echart were permitted to testify respecting Echart's instructions before leaving Pittsburg; but we can not say how the jury may have regarded their oral testimony. The letter, being pertinent and proper evidence and speaking for itself, might have strengthened their evidence. We can not say what effect its exclusion had on the verdict of the jury. Being pertinent and proper, it should have been admitted. It is furthermore said that the defendant was not prejudiced because the evidence shows Echart did not follow but acted inconsistently with his instructions, thereby showing the value of the services of Cobb and his sub-agents in diverting him from the course of his directions. If so, why was not the letter admitted without objection.

Other errors assigned and argued, in connection with admission and rejection of evidence, are the admission of the record of the contract of sale of April 17th; the refusal to permit Dunlevie to testify regarding the $5,000 check covering the cash payment referred to in that contract; the refusal to permit him to testify in relation to what was done about procuring the release of the Lippincott contract referred to therein; the refusal to permit him to testify as to the circumstances and reasons for writing his letter to Cobb of April 18, 1906; and, lastly, the sustaining of plaintiff's objection to the following question propounded to him on cross-examination: "Mr. Cobb, you have testified that you heard that there was a contract made on the 17th of April, 1906; did you not hear from the same source at the same time that it was a conditional contract that was made at that time?"

The principal question of course relates to the admission of the record of the contract, read in evidence from the deed book by the county clerk. This contract as recorded purported to be signed by both parties, but to be acknowledged only by Flint, Irving & Stoner Company, and admitted to record April 27, 1906. The proof shows this contract was

put to record in this form by direction of the Flint, Irving & Stoner Company for its protection, pending negotiations of Dunlevie with Lippincott for release of his contract in reference to the same property. The deed, properly executed and acknowledged, in execution of the contract of sale, was also admitted to record, without objection—thus establishing as a fact the sale and transfer of the property as to which indeed there was no question. The admission of the record of the contract was objected to mainly on the ground of want of acknowledgment by Dunlevie, the original as to him being the best evidence, no notice to produce which seems to have been given; nor was the original called for when Dunlevie, Flint & Echart were upon the stand. While it was important for the plaintiff to show a sale of the property on the terms on which he was authorized to sell, this was accomplished by the deed without the contract and by admissions of the defendant, Flint and Echart. Clearly as to Dunlevie, the clerk was not authorized by sections 2 and 3, chapter 73, Code, to admit the contract to record, the same not being acknowledged by him or proven by witnesses; and, not having been properly admitted to record as to Dunlevie, a certified copy thereof under section 5, chapter 130, Code, would not be admissible as evidence against him; and of course the record in the deed book would be no better evidence. We must say, therefore, that as to Dunlevie the record of the contract was not the best evidence, and, without an effort to procure and offer the original contract or a showing entitling the plaintiff to offer secondary evidence, should not have been admitted. The principal use made of this contract by the plaintiff was, in connection with his letter to Cobb of April 18th, to discredit Dunlevie. In that letter Dunlevie had said to Cobb, among other things, that he had decided to discontinue any further negotiations for the sale of his property and to drop the matter entirely. With this contract in, and the use to which it was put in connection with the letter referred to, we think he should have been permitted to explain the receipt of the check for $5,000, to tell what had been done at the time of writing this letter respecting cancellation of the Lippincott contract, and to explain the circumstances and reasons for writing the letter of April

18th, all which was denied him by the trial court; and, although as the record stands it was quite immaterial, we do not see why the court upon cross-examination should have sustained the objection to the question put to Cobb. He had testified in chief as to having heard of the contract of April 17th, implying an absolute sale. It seems to us it was perfectly proper on cross-examination to ask him if he had not heard it was a conditional contract. The record of the contract had not then been put in evidence. After it was, of course any testimony as to what it contained and the nature of it would have been improper.

Another assignment of error relied upon is the admission of the evidence of Cobb in relation to a prior contract to sell the defendant's property, in which he says: "In that contract Mr. Dunlevie agreed to pay me quite liberally, and I think if I sold at the price he suggested it would have netted me either $20,000 or $25,000 on the very same property which I had sold to Mr. Dunlevie." It is argued that this evidence related to a special agreement of Dunlevie in 1905 to pay Cobb a certain sum for making a particular sale at some price and on some terms not stated by Cobb, and was irrelevant and incompetent; that the object was to get large figures before the jury, so as to magnify the plaintiff's claim. We think, as this evidence related to prior negotiations between plaintiff and defendant respecting a sale of the same property here involved, and so shortly before the sale in question, it was competent upon the question of compensation. *Holman* v. *Fesler*, 7 Watts & Serg. 313; *Tarrant* v. *Gittelson*, 16 S. C. 231.

The next error assigned relates to the action of the court in permitting the jury at their request to take to their room the letter of Cobb to Dunlevie of February, 1906, which said: "I note what you say in your letter of the 8th inst. relative to selling your property. If any further negotiations are had in the matter, it will be in accordance with your instructions; that is, I will first know who the party is and his responsibility, and if things seem all right, then I will submit the matter to you; but you can be assured that I shall not bother you or give you any annoyance in this matter at all." The defendant objected, unless the court permitied the jury to also take to their room all the

letters read in evidence.   The statute, section 12, chapter 131, Code, leaves it in the discretion of the court, to be soundly exercised of course, whether "depositions or other papers read in evidence" can be carried from the bar by the jury.   We can not see how the action of the court was prejudicial to the defendant.   Formerly the statute read that "papers read in evidence though not under seal may be carried from the bar by the jury."   After the cases of *State* v. *Cain*, 20 W. Va. 679, and *Welch* v. *Insurance Co.*, 23 W. Va. 289, this statute, apparently to supersede the rule laid down in those cases, was so amended as to include depositions.   We perceive no error in this action of the court.

The other errors assigned relate to the instructions.   First, as to plaintiff's instruction number 1, given.   In effect, it told the jury that, if they found that defendant employed plaintiff "to assist in making sale," and pursuant thereto the plaintiff employed Wilson & Shipman as sub-agents, and they employed Dunkle to assist them, and Dunkle met Echart and informed him of defendant's property, and took him as a prospective purchaser to defendant, and Echart took up negotiations with defendant resulting in a sale of the property, they should find for the plaintiff, "even if the jury should believe from the evidence that the said Echart and Flint, Irving & Stoner Company had knowledge of said Dunlevie property and that the same was for sale."   The just criticism of this instruction is, first, that the words "to assist in making sale" do not correctly state the terms of the contract alleged and proven, and, second, that it limits the negotiations between seller and purchaser shown in evidence to a mere knowledge on the part of the purchaser of the defendant's property and that it was for sale.   If the instruction had stated the employment in the terms of the contract alleged and proven, and, instead of limiting the direct negotiations between seller and purchaser to a bare knowledge of the property and that it was for sale, had further qualified it so as to fit the evidence on that subject, it would have been proper.   The rule respecting instructions applicable, as announced by this Court, is that "an instruction can not take only a portion of the facts involved in a case under the evidence, and erect a hypothesis

upon them only, disregarding others, and tell the jury, if that hypothesis be true, to find accordingly, because that hypothesis is not as broad as the scope of the evidence and the contention before the jury." *Thompson* v. *Douglass*, 35 W. Va. 344; *Woodell* v. *Improvement Co.*, 38 W. Va. 23; *McCreery* v. *Railroad Co.*, 43 W. Va. 110. It was argued that any defect in this instruction was cured by the instructions given on behalf of defendant; but, as has been frequently held by this Court, a bad instruction is not cured by a good one inconsistent therewith. *McMechen* v. *McMechen*, 17 W. Va. 603; *McKelvey* v. *Railroad Co.*, 35 W. Va. 501; *McCreery* v. *Railroad Co.*, *supra*.

Next, as to plaintiff's instruction number 2. It told the jury that, finding no contract as to amount of compensation, " the plaintiff would be entitled to recover such compensation as is usual and customary in the locality in which the sale was made." The objection to it is that it was based upon, and intended to control the jury by, the testimony of Cobb, Dunkle and Echols that 5 per cent was the prevailing rate. In response to the question what the usual commission was in absence of a special contract, Dunkle said: "In a general way it is supposed to be five per cent." When asked whether or not they knew the usual commission paid real estate brokers in the counties of Randolph and Pocahontas in absence of a special contract, Cobb and Echols said: "5 per cent of the proceeds of sale." Cobb was permitted to testify, over objection by defendant, that previously he had a contract with defendant for the sale of this property which would have netted him $20,000 to $25,000 commissions if consummated. A letter from Cobb to Dunlevie showed an effort on the part of Cobb to specially contract for 5 per cent., and a letter from Dunlevie to Cobb attempting to limit the commission to 2 per cent. All this evidence was before the jury. There was absolutely no evidence of any particular sales, or of a single instance where 5 per cent commissions were paid. Whether there was any well established custom respecting the subject of commissions in this locality, with respect to which the parties must be presumed to have contracted, was a question of fact for the jury. *Hansborough* v. *Neal*, 94 Va. 722; *Lumber Co.* v. *Lumber Co.*, 103 Va. 730; *Packing Co.* v.

*Tilton,* 87 Ill. 547; *Hitesman* v. *State,* 48 Ind. 473; *Paddock* v. *Insurance Co.,* 28 Mass. 227; *McLanahan* v. *Insurance Co.,* 26 U. S. 170. The vice of the instruction is not that pointed out by counsel, but in assuming as a fact proven that there was such a usual and customary price for like services prevailing in the locality in which the sale was made. That question should have been left to the jury, under a proper instruction.

As to plaintiff's instruction number 4, which told the jury " that if they believe from all the evidence that any witness who has testified in this case has knowingly and wilfully testified falsely to any material fact in this case, they may disregard the whole testimony of such witness, or they may give such weight to the evidence of such witness on other points as they may think it entitled to. The jury are the exclusive judges of the weight of testimony." This instruction seems to be justified by *State* v. *Thompson,* 21 W. Va. 741, and *Ward* v. *Brown,* 53 W. Va. 227; and, as it was made applicable to all witnesses both for plaintiff and defendant, and being the law of the cases cited, we see no error in giving it.

As to defendant's instruction number 3, it told the jury that, if they believed from the evidence that the plaintiff was acting as a real estate broker in February, March and April, 1906, without a state license, they must find for the defendant. It is conceded that this instruction is not good under *Ober* v. *Stephens,* 54 W. Va. 354; but counsel for defendant challenge the correctness of that decision, and request us to re-examine it. This we have done, resulting in the conclusion that that case is well founded in law and ought to be approved. Nor do we think the statute, section 2, chapter 32, Code, subsequently amended so as to in specfic terms include real estate agents, in any way changes the effect of that decision. This instruction was therefore properly refused.

Next, with reference to defendant's instruction number 4, refused. It relates to the binding effect of a letter of Dunlevie to Cobb of March 9, 1906, in which the defendant said, "I will allow you a commission of 2 per cent., to be paid when the sale is consummated and payments made," and tells the jury that, if they find this letter was properly

addressed, stamped and mailed, they can only find a brokerage of 2 per cent as the compensation to be paid plaintiff. Cobb denied receiving this letter. The plaintiff relies on *Campbell* v. *Beard*, 57 W. Va. 509. This case holds that, where one uses the mail to communicate a proposition, the posting of a letter of acceptance makes the acceptance complete the moment the letter is mailed, unless the offer is so qualified as to require receipt of the letter to constitute acceptance. But is the letter in question such an acceptance of a prior proposition transmitted by Cobb? We think not. Cobb had proposed by previous letter 5 per cent., and Dunlevie in reply had said, "We will have no trouble in getting together on that." A subsequent letter proposing 2 per cent was therefore no acceptance of Cobb's proposition. It was a counter proposition, and did not bind Cobb unless received by him. All authorities agree that to be binding the acceptance thus communicated must be unconditional. See *Goulding* v. *Hammond*, 54 Fed. 639; *Iron Co.* v. *Foote*, 16 Fed. 646; *Brown* v. *Railroad Co.*, 44 N. Y. 79; *Marschall* v. *Vineyard Co.*, 28 N. Y. Supp. 62; *Hutcheson* v. *Blakeman*, 60 Ky. 80. Defendant's instruction number 5, given, covers the same subject, and properly makes the binding effect of the letter of March 9th dependent upon receipt thereof by him.

For the reasons given, we reverse the judgment, set aside the verdict, and award the defendant a new trial.

*Reversed.*