**Connersville Co-operative Creamery Association, Defendant in Error, v. Charles Baltz and Otto Diederichs, Trading as Baltz & Diederichs, Plaintiffs in Error.**

### Gen. No. 17,295.

1. SALES—*when buyer estopped to claim reduction.* Where defendant offers to pay plaintiff Elgin price for butter if it scores extra and in case it does not grade extra to hold subject to plaintiff's order or return, and plaintiff makes a shipment with instructions to store and notify plaintiff if it grades below extra and defendant retains it and uses it, he is estopped to claim a reduction in price on the ground that it did not grade extra.

2. SALES—*where butter is shipped to commission merchants.* Where plaintiff ships butter to defendants in Chicago who offer to pay Elgin price in case it grades extra, and the evidence shows

it did not grade as high as extra, the Chicago price for that grade on the day it is delivered governs.

3.  SALES—*when goods are sold on an executory contract.*  Where goods are sold for a certain price on condition that they meet a certain standard when delivered and they are not up to the standard, the buyer may rescind the contract and return the goods or retain them and recoup his damages when sued for the price.

Error to the Municipal Court of Chicago; the Hon. GEORGE J. COWING, Judge, presiding.  Heard in the Branch Appellate Court at the March term, 1911.  Affirmed if remittitur filed, otherwise reversed. and remanded.  Opinion filed May 21, 1913.

DEFREES, BUCKINGHAM, RITTER, CAMPBELL & EATON, for plaintiffs in error; DON K. JONES, of counsel.

HAMILTON & HAMILTON, for defendant in error.

MR. PRESIDING JUSTICE DUNCAN delivered the opinion of the court.

This case was tried without a jury and a judgment was rendered against the plaintiffs in error, Charles Baltz and Otto Diederichs, for an alleged balance of $250.12, due defendant in error for creamery butter.

The butter in question was shipped by defendant in error from its creamery at Downing, Wisconsin, to plaintiffs in error at Chicago in response to a circular letter received from plaintiffs in error dated July 20, 1910, reading as follows:

"We will pay you 28c and a premium for extra quality creamery butter.  We are paying now 1c a pound premium, charging you no freight, drayage or commission, Chicago delivery.  *  *  *  Mark the tubs B. & D., write the full name in the railroad receipt and mail it to us and we will remit you an advance check of $10 a tub after receiving same and the balance due you, afterward.  Above proposition means 29c to you. Ship us a week's churning right away, and tell us how many tubs we can have each week during the season to the first of October."

Defendant in error, July 26, 1910, shipped plaintiffs in error thirteen tubs of butter, 827 lbs. net at Creamery, and wrote them as follows:

"We ship you to-day a small lot of butter in response to your offer of the 20th. We make about 40 tubs per week at present. * * * Whether we can deal with you depends mainly on three points, viz: price, weights and promptness in making returns. Please send remittance for this shipment and enclose inspector's score."

Plaintiffs in error, on July 28, 1910, again wrote as follows:

"Enclosed find check for $130, $10.00 a tub advance money. * * * We would like to have you make us a shipment of a whole week's churning. We can judge better than by part of the week. We see by your bill of lading that Tuesday is your shipping day. * * * We will take your butter each week on the Elgin basis and a premium for quality up to Oct. 1st."

Five days after the butter was inspected, plaintiffs in error wrote their letter of Aug. 3, 1910, to defendant in error:

"The quality of the 13 tubs of butter shipped July 26th would be satisfactory, but the flavor is not what it should be, so that the butter will not do for our contracts, would lose us money if we took it in at full price for our regular trade. * * * Such butter is not satisfactory and we can not pay you Elgin and a premium for it, under any circumstances if this lot should be taken by itself on its own merits. We would be willing to take the butter, pay the price and stand a loss on it by using or holding in storage and run the chance of getting out whole later as may seem best to us. However, if you agree to sell us and ship regularly every week, all of your butter output for the balance of the season ending October 1, 1910, we agree to buy your entire output during that time and pay you Elgin and a premium for quality for it, delivery to be made at Chicago also pay our own freight from Downing, deduct no commission or drayage with the understanding that each further shipment shows a normal regular increase in quantity and such gradual improvement in quality, as to be of a grade that we can put out to our trade at top price as best extras butter for the season when made. Otherwise, we can only pay you what the

butter is worth to us. As to the weights, it is understood that we will remit at the net weight called for by your invoice on each shipment, whether the butter holds out to that weight or not, provided that you are to make good the billed weights or allow for any shortage that the butter may show before the expiration of this arrangement. * * * If this is not satisfactory, return the advance we sent you by Saturday, make provision for paying the charges and let us know at once on receipt of this letter by telegraph what to do with the butter.''

On August 2, 1910, defendant in error shipped thirty-six tubs of butter, 2,264 lbs. at creamery, and on August 4th wired plaintiffs in error:

''If butter shipped August second grades below extras don't sell, but store and write for instructions.''

They also wrote plaintiffs in error on August 5th:

''We have just had an expert at our creamery who says our butter should grade extra. We cannot contract our output to a commission house depending on their score.''

On the same day, August 5th, plaintiffs in error remitted the balance of $102 for the thirteen tubs, making in all a little more than the Elgin price, 28c, at creamery weights, paid for the first shipment, writing to defendants in error as follows:

''In reference to the 36 tubs of butter how much do you think would be right. It is our effort to please our shippers and get their regular shipments each week, of quality butter. We will report on the 36 tubs on arrival.''

The evidence further discloses that no further shipments of butter were made by defendant in error and that notwithstanding the said two shipments were inspected July 29th and August 5th, respectively, and certified as scoring 88 and 89 points, plaintiffs in error retained and used the butter, without reporting the scores to defendant in error until August 18, 1910. A number of other letters were written by plaintiffs in error urging defendant in error to ship its butter

380 APPELLATE COURTS OF ILLINOIS.

Connersville Co-operative Creamery Assn. v. Baltz, 180 Ill. App. 376.

to them, in which the offers were repeated to pay the Elgin price and a premium for the butter already shipped and for its entire output at creamery weight, provided the butter continued to improve and finally score as extra creamery butter. Failing to induce further shipments plaintiffs in error on August 24, 1910, repudiated its former settlement for the thirteen tubs of butter, and after deducting prior payments remitted the balance as full payment for said shipments, at Chicago weights and Chicago prices according to the following showing:

July 29, 13 tubs, 791 lbs., @ 24c....$189.84
Aug. 5, 36 tubs, 2179 lbs., @ 25c....$544.75

The evidence also discloses that according to the Elgin plan of inspection perfect butter scores 100 on a basis of 45 points on flavor, 25 on body, 15 on color, 10 on salt and 5 on package; and that the various other grades of butter are extras, scoring 93 or better; extra firsts, scoring 90 to 92; firsts scoring 87 to 89, and seconds 86 and lower; and that butter deteriorates in quality while being shipped and stored and loses in weight, and particularly in hot weather.

The court allowed defendant in error the Elgin price, 28c per lb., for the two shipments of butter, and Chicago weights. Plaintiffs in error contend that as the butter failed to grade as extra butter that defendant in error was only entitled to the Chicago prices as above set forth, or a judgment for $142.59. We think the court properly held that the second shipment should be paid for at the Elgin price and according to Chicago weights.

Plaintiffs in error were asked to hold that shipment and store it for further orders unless it scored as extra. They were afterwards informed by defendant in error that it would expect for that shipment the full contract or Elgin price of 28c. Notwithstanding this information and their former offer to return butter not grading as extra or to let it stand subject to order of defendant in error, they retained it and used it.

They ought now to be estopped to make any claim for a reduction of the price demanded by defendant in error.

Besides, defendant in error introduced evidence proving that the second shipment of butter was, when shipped, of a very fine quality, known in the market as extra, and we are not disposed to hold that a finding of the lower court that it would have graded as high as extra in Chicago on a fair inspection is manifestly against the weight of the evidence.

While Chicago weights and Chicago inspection were to govern in this contract, by Chicago inspection was meant what it really would have inspected upon a fair square basis. While we are not disposed to discredit the inspector who inspected the butter at Chicago, yet, we think that for the same reasons set forth in the opinion in case No. 17249, *Kleinsmith Bros. v. Baltz & Diederichs, ante,* p. 369 filed by us simultaneously with this opinion, it would not be an unreasonable conclusion that defendant in error was not fairly dealt with in the securing of a prompt and proper inspection. It should have been inspected at least two days earlier, and defendant in error should have been notified at least four or five days earlier that the first shipment was unsatisfactory to plaintiffs in error. Good faith and common fair dealing demanded prompt action and timely notice of such facts in view of the facts testified to by plaintiffs in error that the butter at that season deteriorated rapidly, and that delay necessarily meant loss to defendant in error, no matter whether retained by plaintiffs in error or returned to the shipper. It is evident the second shipment would not have been made had defendant in error been advised promptly that the first shipment was unsatisfactory and below the grade of extra.

There is no evidence in the record that was not excluded, except that offered by plaintiffs in error, as to the score and grade of the butter in the first shipment. We are compelled to find, therefore, that

this shipment did not grade as high as extra and that the Chicago price for that grade on the day it was delivered in Chicago must govern. The contract to pay the Elgin price was contingent upon the butter scoring 93 or better. The terms upon which it was retained by plaintiffs in error at the Elgin price was never met, that defendant in error would continue to ship, etc. Where goods are sold on an executory contract, *i. e.*, for a certain price on condition they meet a certain standard when delivered, the buyer may rescind the contract, and return the goods, or retain the property and recoup his damages when sued for the price. *Underwood v. Wolf*, 131 Ill. 425; *Chicago Packg. & Prov. Co. v. Tilton*, 87 Ill. 547; *Doane v. Dunham*, 65 Ill. 512.

The judgment is excessive and therefore erroneous. If defendant in error will file a remittitur of $31.64 in this court, the amount of such excess, within ten days, the judgment for $218.48 will be affirmed. Otherwise, the judgment will be reversed and the cause remanded.

*Affirmed if remittitur filed; otherwise reversed and remanded.*