# WHEELING.

WAMSLEY v. CURRENCE FOR USE, &c.

Submitted January 29, 1885.—Decided April 4, 1885.

1. Misrepresentation of quantity or quality of land in a sale thereof, in order to amount to fraud, must not be about a trifling or immaterial thing and must not be vague and inconclusive in its nature, nor a mere matter of opinion, nor about a fact equally open to the enquiry of either party, in regard to which neither

| 25 | 543 |
| 40 | 370 |
| 25 | 543 |
| 41 | 203 |
| 41 | 450 |
| 25 | 543 |
| 56 | 58 |
| 25 | 543 |
| 63 | 273 |
| 25 | 543 |
| 65 | 90 |

could be presumed to trust the other; and when the misrepresen-
tation is material and not vague, in order to amount to fraud, it
must have been actually relied upon by the other party, who must
have been misled thereby to his injury.  (p. 546.)

2. Upon a dissolution of an injunction it is not only proper, but it is
required by section 12 of chapter 78 of the Acts of 1882, that a
personal decree should be rendered against the defendant for the
judgment, interest, costs and damages at ten *per cent.* in lieu of
interest while the judgment was enjoined.   (p. 549.)

The opinion of the Court contains a statement of the facts
of the case.

*J. H. & J. F. Brown* and *W. S. Laidley* for appellant.

*J. T. McGraw* for appellee.

JOHNSON, PRESIDENT:

Jacob S. Wamsley bought of Abram Currence of Ran-
dolph county in April, 1872, a tract of land, which was by
deed dated on that day conveyed to him by said Currence
and wife with general warranty.   The deed is for the con-
sideration of $3,640.00 therein expressed, a part of which
was in hand paid, and the residue therein and thereby secured
to be paid.   The landis conveyed by metes and bounds, and
the number of acres contained, or supposed to be contained,
in the tract is not mentioned in the deed.   On July 13, 1872,
the said deed was admitted to record.   The said Wamsley
paid all the purchase-money except the last payment, which
was evidenced by a note of $640.00.   This note was by said Cur-
rence assigned to Mary J. Crouch, who brought suit in the
county court of Randolph county in the name of said Currence
for her use, and on September 11, 1878, recovered against
said Wamsley the said debt, amounting at that time principal
and interest to the sum of $887.47.   On September 19, 1878,
an execution issued on said judgment, and on the first Mon-
day of January, 1879, the said Wamsley filed his bill in the
circuit court of Randolph county against Currence and Mary
J. Crouch, charging that said Currence had made false
representations to him about the quantity of improved land
in said tract, and also as to the quantity of "bottom"
land therein.

He sets this forth as follows : " The inducement for the purchase of said land was solely the improved land upon the farm and mainly a meadow, which the said Currence represented to the plaintiff to contain thirty acres of land, and the residue that was under fence he represented to contain about seventy-five acres, (the said land not having been surveyed to the pointers ;) that the out-lands are comparatively valueless ; that relying upon the representations made to him by the said Currence as aforesaid he purchased the said land as before stated ; that all the purchase-money has been paid except the last note for $640.00 ; that some time back having reason to suspect the representations made to him in relation to the number of acres inclosed upon the said premises, and especially of the meadow, he had the land carefully surveyed and found that the meadow contained less than twenty-seven acress, and the other improved land fell short some eight or ten acres, but that the whole contained about what the said Currence represented it to contain ; that the thirty acre meadow-field was worth about $90.00 per acre, and indeed the plaintiff had a short time before paid to said Currence above that sum for seven acres off the same field and that the residue of the cleared land was well worth $30.00 per acre."

He claimed he was damaged at least $600.00, and prayed an injunction against the collection of said judgment, which was granted.

In May, 1879, Currence answered the bill denying the representation alleged in the bill, but admitting that he told said Wamsley, that in his opinion, if the meadow was surveyed, it would be found to contain thirty acres, and that he told him, that in his opinion the residue of the improved land was about seventy or seventy-five acres. He avers that he told said Wamsley, that he did not know how much land there was in said tract, but he thought there was about 200 acres in all, and about 100 acres improved land. He denies that Walmsley relied on anything he said about the land, because he was as well acquainted with it as the respondent, having been raised close by and owning land adjoining.

The plaintiff filed an amended bill, in which he charges, that Currence represented to him before and at the time of

the sale, " that there were thirty acres in one field of improved land, embracing the first bottom, whilst in fact there is only twenty-six acres," &c.   He does not give any reason for this different charge; the evident object of filing the amended bill was to enlarge his claim for damages or abatement from $600.00 to $960.00.

Mary J. Crouch answered both the bill and amended bill and in her answers says, she was induced to purchase the $640.00 note by Wamsley's representation to her, that it was "all right and just;" that a short time before she brought her action against him, he promised to pay the same, if she would take cash paper and cattle therefor, which she declined, &c.

Currence answered the amended bill denying all the material allegations thereof affecting his good faith and charging him with misrepresentation.

Numerous depositions were taken mostly on the value of the land and the quantity of bottom and improved land and the value of certain portions per acre.

On May 28, 1883, the case was heard in the circuit court of Randolph county on the pleadings, former orders, &c., on the report of the surveyor of the county, to whom a reference had been made, and depositions of witnesses, &c., and the court dissolved the injunction and dismissed the bill, and gave a personal decree in favor of Mary J. Crouch against Wamsley for $1,319.76, being the aggregate of principal, interest, damages and costs due on the enjoined judgment with interest from the date of the decree; and the defendants were decreed costs.

From this decree Wamsley appealed.

It is here insisted, that Currence by fraudulent misrepresentations as to the quality of the improved land and "bottom " land induced Wamsley to pay a larger price for the tract than he otherwise would have paid.   A misrepresentation, in order to amount to fraud, must not be about a trifling or immaterial thing but must be material and not vague and inconclusive in its nature, and must not be a mere matter of opinion, nor about a fact equally open to the enquiry of both parties, and in regard to which neither could be presumed to trust the other; and when the misrepresentation is material

and not vague, in order to amount to fraud, it must have been actually relied upon by the other party, who must have been misled by it to his injury to do or agree to do that which he would not otherwise have done or agreed to do. (*Crislip* v. *Cain*, 19 W. Va. 438.) This one legal proposition from our leading case on the subject is sufficient to settle this cause.

The plaintiff in his deposition says : " Currence told me there were 100 acres of improved land on the farm, and said there were sixty acres of bottom-land and showed me where it lay ; said there were thirty acres in the bottom field above the house and said there were thirty acres of bottom at the lower end of the farm, improved land, making sixty acres of bottom-land. He counted the balance as second bottom and improved upland, and called it forty acres, making in all 100 acres of improved land.    *    *    He said in the field above the house he had leased it to some men in different pieces and that there were so many acres in each piece, making in all thirty acres. He showed me different pieces of land at the lower end of the farm and said they contained so many acres, making in all thirty acres, and counted over the different fields on said farm each containing so many acres, making in all the 100 acres of improved land."

On cross-examination he said, in purchasing land he generally relied upon his own judgment, but if he had a chance he often advised with others ; in the purchase from Currence did not recollect that he advised with anybody ; was tolerably well acquainted with the land, before he bought it ; had never been over it to examine it ; could see it from where he lived, and had known it all his life, and was then fifty-five or fifty-six years old ; had passed through the land a great many times.

Currence in his deposition said : " I told Wamsley I thought there were about 200 acres in the tract, as near as I could judge, and I thought about 100 acres of improved land. I had no way of measuring the exact amount, but in one field or upper bottom I thought there were about thirty acres in it, that was my guess, which included a piece I sold to him before ; and at the same time I told Wamsley that my grandfather had always called it twenty-five acres, but I thought to measure it correctly that it would measure thirty

acres; and in regard to the 'orchard' and 'house' lots I don't think there was anything said about how much was in them. I don't recollect that there was. The first field there below the house, I told Mr. Wamsley I had always called that eight acres, and the next field below that, I thought there was about fifteen acres in it; and the lower bottom field, I counted that at about five acres, and there were uplands which I supposed contained about forty acres. It was never measured to my knowledge. * * * * * I made no representation only as I guessed at it. I never measured it. * * I told Wamsley I never knew the exact quantity of land in said fields, because I never measured it."

The only other witnesses, who were present at any time during the negotiations, as far as the record discloses, were the wife of Currence and Azariah White. The wife's deposition was not taken. White said he was present when the parties were trading, and says that "Abram Currence represented to said Wamsley, that there were 100 acres of improved land on said farm." He further says, he did not at that time state how many acres were in the meadow above the house. He did not recollect of anybody else being present at the time. At that time they were walking over the land and looking at it. He was asked the question, after stating that Wamsley asked Currence how many acres there were, "What was the answer to that question?" "He said there were 100 acres." Question.—"Did not Currence say on that occasion, that he had never measured it?" "Not that I recollect of."

The report of Nicholas Marsletter, surveyor of lands for Randolph county, to which there is no exception, shows that running the lands as Wamsley desired him he found of improved land on the farm after deducting what Wamsley had improved after the purchase there were in bottom-land forty-six acres three roods and thirty-seven poles; and in the upland, after a deduction of one acre for "improvement made by Wamsley and for bushy land," fifty-seven acres and seventeen poles; the improved land, bottom and upland, being 103 acres, 4 roods and 14 poles. The report also shows the whole tract, 309 acres, 14 poles, and going to the thread of the river, 321 acres, 1 rood and 14 poles.

This very clearly shows, that he received much more land over 100 acres than either supposed the tract contained, and over three acres more of improved land than White testified, Currence represented it to contain. As to the deficiency in the meadow it is not shown, that Wamsley has any right to complain, because it is not proved that Currence made any positive representations as to what it contained. But if he had represented that the meadow contained a certain number of acres, when it contained less, it would not avail Wamsley under the authority we have cited, as he had an equal opportunity with Currence of knowing the number of acres in the meadow. He had lived near the land all his life, bought a part of the same meadow not long before, and was looking at it when he bought it. There was no deception whatever practiced upon him.

It is claimed that the computation of interest, damages, &c., is excessive and unlawful. Section twelve, chapter seventy-eight of the Acts of 1882 provides: " When an injunction to stay proceedings on a judgment or decree for money is dissolved wholly or in part, there shall be decreed to the party having such judgment or decree damages, in lieu of interest, at the rate of ten *per centum per annum*, from the time the injunction took effect, until such dissolution thereof, on the amount of principal, interest and costs due on the judgment or decree, proceedings on which are enjoined, and it a forthcoming bond has been taken in the case, the amount on which such damages shall be paid, shall be the sum due on such bond. And in all cases, the court or judge dissolving the injunction, shall ascertain and enter in the decree of dissolution the amount of the principal, interest, damages and costs, including officer's fees and commissions due on the judgment or decree, at the date of the dissolution of the injunction, and shall award execution therefor against the defendant in the judgment or decree, proceedings on which were enjoined, or their personal representatives, with interest thereon from that day till paid, and the costs incurred by the defendant in the injunction in defending the same."

The court almost literally followed the statute. The calculation of the interest and damages are substantially correct.

There is no error in the decree appealed from and it is affirmed.

AFFIRMED.