# CHARLESTON.

HOWARD THOMAS *v.* MONONGAHELA VALLEY TRACTION COMPANY.

Submitted March 21, 1922.    Decided March 28, 1922.

1.  EVIDENCE—*Opinion of Witnesses—Admissible When Impossible to Present Facts in Entirety which Produced Particular Result after Pertinent Facts are Detailed as Fully as Possible.*

    Ordinarily the opinions of witnesses should not be received in evidence, but when it appears that it is impossible to present the facts which produced a particular result to the jury in their entirety, so as to permit them to form as intelligent judgment thereon as though they had witnessed the occurrence, it is not error to allow a witness to give the impression made upon his mind at the time by the occurrence inquired about, after he has detailed as fully as possible the pertinent facts in regard thereto as the same were observed by him. (p. 684).

2.  CARRIERS OF PASSENGERS—*Degree of Care Required of—Presumption that Derailment was Caused by Negligence.*

    It is the duty of a common carrier of passengers to exercise the highest degree of care of which human foresight is capable in the operation of its cars, and in the maintenance of its tracks and roadbed; and where a passenger is injured by reason of one of its cars becoming derailed, there is a presumption that such derailment was caused by the negligence of the carrier. (p. 687).

3.  SAME—NEGLIGENCE—*Presumption of in case of Derailment Overcome by Showing High Degree of Care in Maintenance of Track and Operation of Cars or by Cause Beyond Control of Carrier.*

    This presumption of negligence may be overcome by the carrier by proving to the satisfaction of the jury that it did exercise the high degree of care required of it in the

maintenance of its tracks and appliances, and in the operation of its cars, or by attributing the accident to a cause beyond its control. (p. 687).

4.  Same—*Only Required to Exercise Reasonable and Ordinary Care to Discover Objects Off of Right of Way which may Become Dislodged and Obstruct Tracks.*

A common carrier is not required to exercise the highest degree of care of which human foresight is capable to discover objects off of its right-of-way upon lands adjacent thereto which may possibly become dislodged and obstruct its track, but it is only required to exercise in this regard reasonable and ordinary care. (p. 688).

5.  Same.

Where a carrier of passengers attempts to excuse itself for the results of an injury caused by a derailment of one of its cars by showing that such car was derailed by an obstruction rolling down upon its track from off the hillside above its right-of-way, it is error to instruct the jury on motion of the plaintiff that the carrier under all circumstances is required to exercise the highest degree of care to discover and prevent obstructions upon its track from any source. (p. 688).

6.  Instructions—*Inconsistent Binding Instructions Should not be Given even Though one of them States the Law Correctly.*

It is error to give inconsistent binding instructions, even though one of them correctly states a controlling proposition of law, for the reason that the court is unable to determine whether the jury, in arriving at their verdict, followed the law as laid down in the instruction correctly propounding the proposition, or followed the directions given in the instruction incorrectly propounding it. (p. 691).

Error to Circuit Court, Marion County.

Action by Howard Thomas against Monongahela Valley Traction Company, for a personal injury to him while a passenger on one of defendant's interurban cars.    Judgment for plaintiff, and defendant brings error.

*Reversed and remanded.*

*Tusca Morris, O. E. Swartz* and *A. J. Colborn,* for plaintiff in error.

*Harry Shaw* and *Walter R. Haggerty,* for defendant in error.

RITZ, JUDGE:

By this writ of error the defendant seeks reversal of a judgment in favor of the plaintiff for a personal injury sustained by him while a passenger on one of the defendant's interurban cars by reason of the same becoming derailed and turning over an embankment.

On the 31st of December, 1918, the plaintiff became a passenger on one of the defendant company's cars being operated from Mannington to Fairmont.    The car upon which the plaintiff was a passenger left Mannington about 8:35 P. M., and after it had travelled a little more than half of the distance between Mannington and Fairmont, at a point on the defendant's line where the track runs at the base of a steep hill and around a bend of Buffalo Creek, the car became derailed and turned over the embankment with one end thereof in the creek.    The plaintiff contends that he sustained an injury to his head and severe injuries to his elbows and knees in this accident.    He was in the front end of the car, that being the end that went down the embankment, and the other passengers were thrown upon him which, according to his contention, caused his injuries to be more severe than those received by others who were in the car at the time.    The plaintiff brought this suit to recover damages for his injuries, contending that the accident was due to the failure of the defendant to properly maintain its tracks and rolling stock, and to properly operate the car on the occasion of the derailment.    A trial resulted in a verdict and judgment in his favor for the sum of $1000.00.

The contention of the defendant is that the derailment was caused by a stone about the size of a nail keg rolling down the steep embankment from off the lands adjoining its right-of-way, and alighting upon the track immediately in front of the car, which caused the car to be derailed and turned over the embankment when it ran upon the stone.    The employe who was operating the car at the time states that he saw the stone bounding down the side of the hill just before it hit the roadbed, and that he immediately applied the emergency brake, but was unable to stop until the car ran upon the stone.    In this statement he is corroborated by

another witness who was in the front vestibule with him at the time.   The evidence introduced by the plaintiff shows that the car was running at a very high rate of speed at the time of the derailment.   In fact, some of the witnesses say that while they had travelled on this interurban line frequently, they never before nor since were on a car that travelled as fast as this one was going at the time.   The plaintiff was allowed to testify that just before the accident the car was swinging from side to side because of the excessive speed at which it was being run, and that it was from this cause that the derailment occurred.   The curve in the track at the point of derailment was toward the creek into which the car turned, for which reason the defendant insists that the derailment could not have been caused by fast running, for if that had been the case the car, instead of going over the creek bank, would have run into the embankment on the opposite side, but the plaintiff contends that this would not necessarily be so; that the probability is that the rear truck of the car first became derailed and ran in toward the bank opposite the creek, and caused the front truck to run over the bank on the opposite side.   One of the plaintiff's witnesses testifies that he heard one of the employes say immediately after the accident that the derailment was caused by a stone on the track, and that after taking his wife home he returned to the point of the accident for the purpose of making an examination to determine whether or not this was correct; that he made an examination at the place of the accident about a half hour to an hour after it happened, and before there had been any disturbance of the place by the defendant's workmen, and that he found no stone, nor any indication of one being upon the track, to which the derailment could be attributed.

The defendant objected to the plaintiff being allowed to state that the car was derailed because of fast running, its contention being that this was the very matter to be determined by the jury, and that the plaintiff should not have been allowed to give his opinion thereon.   Ordinarily a witness should be required to testify to facts within his knowledge, and not give his opinions, but there are exceptions to

this rule.   In those cases where it is difficult, if not impossible, to convey to the jury the exact situation, it is sometimes permissible to allow the witness to give the impression made upon his mind by the occurrence which he observed. This is not really giving an opinion formed by him upon consideration of the facts observed, but is simply conveying to the jury the impression which was produced at the time by the occurrence.   Wigmore on Evidence, § 658; *Kunst v. City of Grafton,* 67 W. Va. 20; *Walker* v. *Strosnider,* 67 W. Va. 39-71; *Starcher* v. *Oil Co.,* 81 W. Va. 587.   Did the evidence of the plaintiff complained of amount to any more than this?   He testified about what he thought the speed of the car was, to-wit, about thirty miles an hour; that it was running very fast; that it was swinging from side to side; and he attempted to state as best he could just exactly what movements the car was making; and then, in answer to a question, give the impression produced upon his mind from the derailment of the car under these circumstances.   We do not think the statement was of very great probative force, and ordinarily it is better not to introduce such testimony, but we cannot say that under the facts disclosed this evidence was not properly admitted.

It is also contended that the court erred in permitting the plaintiff to testify that he had not been able to work since the accident, due to the injuries received therein, the contention being that this was simply an expression of opinion upon his part as to the cause of his disability.   We hardly think this evidence is subject to that criticism.   Plaintiff testified that at the time of the accident he was in good health, and was suffering from no disability of any kind. It is true he says he had just recovered from an attack of Influenza, but he says that his recovery was complete, and that he felt no pain and experienced no disability from that cause; that at the time of the accident, in addition to a severe scalp wound, he sustained injuries to his arms and to his legs from other passengers being thrown upon him when the car went over the embankment; that his arms and legs began to give him serious difficulty immediately after the accident, and continued to do so up to the time of the trial, and that he

was even then unable to work on account of this disability; that he had been treated by Dr. Waddell who insisted that there was nothing the matter with his legs or arms, and declined to give him treatment for that trouble; that he went to Dr. Keister in the month of March, 1919, and had him make an examination to discover what treatment was necessary to remove the trouble.    Dr. Keister testifies that he made an examination of the plaintiff and found that the trouble with his arms and legs was due to Neuritis and Synovitis; that Neuritis is a disease of the nerves, and Synovitis a disease of the lining of the joints.    While Dr. Keister does not testify that either of these diseases resulted from the accident, or would likely result from such an injury as the plaintiff sustained in the accident, Dr. E. P. Smith, who gave the plaintiff first aid at the time of the accident, testifies that these diseases often come from injuries such as the plaintiff suffered on that occasion.    Upon this showing we do not think it was error to permit the plaintiff to testify as to the disabilities under which he was laboring, and had labored, ever since the injury, nor to permit Dr. Keister to testify to the conditions which he found to exist upon his examination of the plaintiff.    The relation in time between these conditions and the accident is so close that even without any evidence tending to show that such diseases would likely result from such an injury, it might be said that the same could be properly attributed to the accident.    It is true, some of the medical experts testify that such diseases might come from Influenza, but the defendant had testified that he had entirely recovered from that trouble, and was suffering no inconvenience of any kind at the time of the accident; that his elbow joints and knee joints were severely bruised and injured in the accident, and that the trouble with which he continued to be afflicted began immediately after the injury, and at the very joints where his limbs were bruised and mashed.    The case of *Wilson* v. *Fleming,* 89 W. Va. 553, it is insisted, condemns the introduction of this evidence, it being insisted that it should not have been allowed to be introduced until some medical expert testimony was offered showing that the diseases discovered by Dr. Keister were in

all reasonable probability caused by the injuries sustained in the accident.    We do not think that case throws any light upon the situation we have here.    In that case the plaintiff had sustained an injury which he contended induced tuberculosis with which he became afflicted long after the accident, and the effort was to recover damages for the injury to the plaintiff from this tubercular condition.    That case simply held that there was no such connection shown between the tubercular condition afterward found to exist in the plaintiff and the accident as warranted a recovery of damages on that account, and the authorities cited in that case, and relied upon by the defendant in this case, as condemning this evidence, are to the effect that where one seeks to recover damages for a probable future condition which will result from his injury, he must show that there is a reasonable probability at least that the condition for which he seeks to recover damages will ensue from the injury inflicted upon him by the defendant's negligent act.    If the plaintiff in this case was seeking to recover damages for some disease with which he expects to be afflicted in the future, as a result of the injuries he received, then those authorities would have application.    This he is not trying to do.    His attempt to recover here is for disabilities which have already ensued, and which followed immediately upon his receiving the injuries, responsibility for which he attempts to fix upon the defendant.

Upon the trial of the case the court instructed the jury that if the plaintiff received an injury by reason of the derailment of the defendant company's car, while he was a passenger thereon, there was a presumption that the derailment was because of some negligence upon the part of the defendant, and the plaintiff would be entitled to recover, unless the defendant overcomes this presumption; that in order to do so it must show that it used the highest degree of care of which human foresight is capable to prevent any obstruction from being upon the track, or any improper operation of its cars or appliances; and that unless it did appear from the evidence that the defendant had exercised such high degree of care to prevent such obstructions, or in the operation

of its cars, then the plaintiff was entitled to recover. The defendant insists that this doctrine of *res ipsa loquitur* has no application to this case, and that even if it does have application to the instant case, the plaintiff is not entitled to the benefit of it, for the reason that he undertook to attribute the accident to a particular cause, to-wit, fast running; and, further, that even though the doctrine of *res ipsa loquitur* is properly applicable, still when the defendant introduced evidence showing, or tending to show, that the derailment was caused by an obstruction upon the track which came from up on the hillside off of the lands of another party, it had met the requirement of the law, and had accounted for the accident on a theory which would not impose upon it the duty of the highest degree of care to prevent obstacles from being upon the track, but that if the jury believed that this obstacle rolled down the hill from off of the lands of an adjoining owner, then it would only be required to exercise such ordinary prudence and foresight to prevent such obstruction as would be expected of the ordinarily prudent man under similar circumstances.

We do not think there is anything in the defendant's contention that the doctrine of *res ipsa loquitur* does not apply in this case. If the plaintiff had attributed this accident to an undisputed cause then, of course, there would be no ground for any presumption of negligence. When the cause of the accident appears, there is no necessity for indulging such presumptions. In this case, however, the cause of the accident is seriously disputed, the defendant contending that it was caused by an obstruction rolling upon the track from off the right-of-way, while the plaintiff contends that if it was caused by an obstruction upon the track at all the obstruction came from out of the cut upon the right-of-way. The authorities cited and relied upon by the defendant to show that there is no room for the application of the doctrine of *res ipsa loquitur* are that character of cases where the cause of the accident is not in dispute, typical of which is *Fleming* v. *R. R. Co.*, 158 Pa. 130, 22 L. R. A. 351. In that case the injury was to a passenger from a stone which rolled down the mountain side and crashed through the side of the car kill-

ing the passenger while the train was in motion.    The cause
of the accident was undisputed, and the court held that there
was no ground upon which to indulge a presumption of neg-
ligence; that the admitted facts either made the defendant
negligent or not.    So in this case, if the plaintiff had shown
that the car was derailed by reason of a stone upon the track
which had rolled down from the hillside, and the defendant
had acceded to that as the cause of the trouble, there would
be no reason for indulging any presumption. ˙ The whole
facts would be before the court and the actual cause would
be apparent.    However, we think it may be said that where
a passenger upon a railroad car is injured because of derail-
ment of that car, there is a presumption that the derailment
is caused by the negligence of the defendant, either in fail-
ing to properly operate the car, to keep it in proper condi-
tion, or to exercise that high degree of care required of it in
maintaining its railroad and right-of-way. That presumption
existed in this case, and the plaintiff was entitled to the bene-
fit of it until the defendant had overcome it by attributing
the accident *to some efficient cause beyond its control,* or by
showing that it had exercised that high degree of care which
the law imposed upon it.    It attempted to excuse itself by
doing both of these things.    It attempted to prove that the
car was derailed from an obstruction upon the track, and
that this obstruction came from beyond its property.    It
also attempted to prove that it had used all the care that could
possibly be required of it respecting its track and respecting
the cut at the point where the accident happened; and further
attempted to prove by its employes that the car was being
properly operated at the time of the derailment, and that
it was in first-class condition.    Whether it succeeded in ex-
onerating itself from liability is a question for the jury. The
defendant insists that it has shown beyond controversy that
this stone rolled down the hillside from adjoining lands and
derailed this car.    It is true, its engineer testifies that on
the day after the accident he went to the point of the de-
railment and found a little slide far up on the hill out of
which he says this stone came.    It is testified that it was a
limestone rock.    The man who was in charge of the opera-

tion of the car at the time, as well as the man who was with
him, state that they saw the stone bounding down upon the
track, but it is not conclusive from their evidence, even con-
ceding it to be true, that the stone came from off the right-
of-way. So far as their statements are concerned, the stone
may have dropped out of the ledge of rock which was in the
cut on the defendant's right-of-way, and about 25 feet above
the track. The plaintiff shows by the owner of the land that
there is no limestone on his land, and attempts to show that
the only limestone is the ledge which crops out in the cut, and
which was loosened by the construction of the defendant's
railroad. From this it will appear that it is not at all con-
clusive that this stone, even though it be conceded that the
car was derailed by a stone on the track, came from off the
right-of-way. The jury might very well infer that this
stone fell from the limestone ledge in the cut through which
the car was running at the time, and that the defendant was
negligent in not properly inspecting this cut under the cir-
cumstances. Again, there is considerable evidence tending to
show that the derailment was not caused by an obstruction
upon the track, and that the defendant's car was operated at
an excessively high rate of speed at the time. If the jury
believed this theory of the case, then the defendant has not
excused itself by showing that it exercised that high degree of
care imposed upon it by law. The vice of the instructions
given on behalf of the plaintiff is that they impose upon the
defendant the highest degree of care of which human fore-
sight is capable to prevent its track from being obstructed,
and it is insisted that this rule is not correct as applied to an
obstruction coming from off the hillside, as is contended was
the case here. The defendant contends that even though
the jury in this case believed that the rock rolled down from
the hillside, as contended for by it, then it would still be
burdened with the same high degree of care which it would
be required to exercise in the maintenance of its own prop-
erty. Of course, it may be said that when a railroad company
properly constructs its road, and there is no showing in this
case that the defendant's road was not properly constructed,
it need not anticipate obstructions coming upon its track

from outside sources; that its duty in that regard is simply to exercise that ordinary degree of care and foresight which would be attributed to the ordinary man under similar circumstances.    If there is an overhanging rock upon an adjoining hillside which it is apparent might roll down and obstruct the track, it would be the duty of the railroad company to remove it, or have it removed, and its failure in this regard would constitute negligence.    The same would be true as to anything else which it is apparent might be dislodged and become an obstruction upon its roadbed.    But can it be said that there is any duty of active inspection of the adjacent lands?    In this case it appears that while the land was steep above the defendant's right of way, it remained in its natural condition.    Vegetation was growing on it, and there was nothing to indicate that the defendant might contemplate an obstruction upon its track from that source. The authorities relied upon by the defendant  establish no more than that when it is shown that the obstruction comes from an outside source there is no presumption of negligence against the defendant, but that negligence must be proven if it is sought to hold the defendant liable in such a case. We think this doctrine is correct, and that the court erred in instructing the jury on behalf of the plaintiff, for the effect of the instructions given is to hold the defendant to the same high degree of care to prevent obstructions from coming upon its track from an independent source as it must exercise in inspecting and policing its own right-of-way.    These instructions should have told the jury that the happening of the accident under the circumstances proven raise a presumption of negligence against the defendant, and that the plaintiff would be entitled to recover unless the defendant showed that it exercised the highest degree of care that human forsight is capable of in the operation of its railroad, and in discovering obstructions upon its track, or in the prevention of such obstructions, unless the jury believe that such obstructions came from the lands of another, in which case the defendant would not be liable, unless it was guilty of negligence in relation thereto, and that its duty in that regard would be that of ordinary care under the circum-

stances shown to exist. We think the plaintiff's instructions impose too high a degree of care upon the defendant in case the jury should be of opinion that the rock which caused the derailment, if it was caused by an obstruction upon the track, came from adjoining lands. It is true the court gave an instruction upon motion of the defendant which properly presented this proposition of law to the jury. The effect of this instruction was that if the jury believed that the car was derailed from a rock which rolled upon the track from off the right-of-way, and that the defendant had exercised reasonable and ordinary care to prevent obstructions from such sources, then it would not be liable, and their verdict should be for the defendant. The difficulty is that the instructions given upon the part of the plaintiff impose upon the defendant a different degree of care in this regard, and they are binding instructions. The instructions are inconsistent, and it is error to give inconsistent instructions, even though one of them correctly propounds the law, for it is impossible for the court to say whether the jury, in reaching its verdict, followed the one which correctly propounds the law, or the other. *Penix* v. *Grafton,* 86 W. Va. 278.

It appears from the evidence in this case that at the time of the derailment the conductor in charge of the car had taken the place of the motorman. The defendant undertook to show that he was a competent motorman, and introduced some evidence tending in that direction. It was also shown that there was upon the front vestibule with him at the time of the derailment another employe of the company. The defendant asked the court to instruct the jury that if they believed that the man who was operating the car was a competent motorman, and that the fact that another person was upon the platform with him at the time of the accident did not in any way contribute thereto these facts should have no weight with them in arriving at a verdict. Of course, this would be a perfectly axiomatic conclusion, and we see no reason why the court did not give the instruction. It is so fundamental, however, that evidence which does not prove anything should not have any weight in deciding a case that it may be said that the jury would take notice of this without

an instruction. In view of the fact, however, that the evidence was introduced, and that there was a controversy as to whether or not the car was being properly operated at the time of the accident, we think the instruction should have been given, and inasmuch as the case will have to go back for a retrial because of the errors above pointed out, this error can then be corrected, should the defendant request such an instruction upon another trial of the case.

This disposes of the assignments of error relied upon by the defendant, and results in a reversal of the judgment complained of.

*Reversed and remanded.*