QUALITY BEDDING CO., A. W. VA. CORP.

*v.*

AMERICAN CREDIT INDEMNITY CO. OF N. Y., *Etc.*

(No. 12380)

Submitted September 21, 1965. Decided December 14, 1965.

*Lewis A. Staker,* for appellant.

. *E. Henry Broh,* for appellee.

BROWNING, PRESIDENT:

Plaintiff, Quality Bedding Company, a corporation, was the assured in a policy of insurance issued by the defendant, American Credit Indemnity Company of New York, whereby the defendant agreed to indemnify plaintiff against loss due to the insolvency of its debtors to a certain amount, and particularly against loss due to the insolvency of the Huntington Chair Corporation to the extent of ten thousand dollars, occurring during the calendar year 1961. The policy, in brief, provided twelve specific instances determinative of when insolvency had occurred within the meaning of the policy and also provided that the insured could file with the defendant for collection any claim against a debtor not more than three months past due even though such debtor was not insolvent as defined by the policy.

On December 19, 1962, plaintiff instituted this action against the defendant for the sum of ten thousand dollars plus interest and costs alleging that the defendant through misrepresentation and fraud had delayed establishing, and caused plaintiff to delay establishing, its rights under the policy and thereby deprived plaintiff of its right to collect the sum of ten thousand dollars under the terms of the policy. The defendant answered denying any fraud or misrepresentation and asserting that it was plaintiff's duty to establish the insolvency of the debtor, Huntington Chair Corporation, within the policy period. The Huntington Chair Corporation is sometimes referred to in the exhibits and testimony as Huntington Furniture Corporation.

Upon trial of the case, plaintiff adduced the testimony of Mr. Budd Moser, its president. Mr. Moser testified that he first purchased a policy from the defendant covering the year 1960, and, at the time settlement was made by the defendant for losses incurred during that period, he renewed the policy for the calendar year 1961. At the time of renewal the defendant was unwilling to cover the account of the Huntington Chair Corporation, which had

incurred an indebtedness to plaintiff in the amount of fifteen thousand dollars during 1960, for the year 1961, but agreed, by so denominated "Extraordinary Coverage" and "Back Sales" endorsements, to insure the 1960 account to the amount of ten thousand dollars during 1961. Thereafter plaintiff continued to deal with Huntington Chair on a cash before delivery basis, but received no payment on the arrearage. Mr. Moser discussed the situation on several occasions with defendant's representative, Mr. Schillinger, and on August 7, 1961, Mr. Moser directed a letter to the defendant, reciting substantially the above facts and continuing:

> "We hesitate to turn this account over to you for collection because undue collection pressures might result in embarrassment to Huntington Furniture Corporation. In light of our insurance coverage, we agreed to carry them for a while on the $15,000 as they were not in a position to pick up any of the past due indebtedness.
>
> ". . .
>
> "If your coverage was extended through 1962 and would be part of our general renewal insurance policy, we would not exert serious collection pressures now. The thought occurs to us that we might be able to procure 15 post-dated checks in the amount of $1000 each for deposit at monthly intervals. Obviously, this would carry the account into 1962. We would not want to follow such procedure unless we had your assurance that the $10,000 coverage would be extended into 1962. Therefore, before submitting such a proposition to this debtor, we would like to know your position. . . .
>
> "Frankly, we are deeply concerned over this particular account. We have discussed this from time to time with Mr. Schillinger. After talking to him on Wednesday and going over some of this detail, we concluded that our best procedure would be to explain the situation to you and then follow a course, predicated upon your recommendations.
>
> "After you have had an opportunity to analyze the picture, we would like to hear from you. Thanking you in advance for your instructions. . . ."

No reply was received to this letter and on October 25, 1961, Mr. Moser wrote Mr. Schillinger stating, ". . . As you know, we are not willing to accept the responsibility for this account without insurance coverage. Since. . . [defendant] is not willing to carry this account beyond 1961, a course of action will have to be determined. . . .", and requested that Mr. Schillinger see him before November 8. On November 9, 1961, plaintiff wrote to Mr. Kliment, Service Manager of defendant, enclosing notification of its claim against Huntington Chair and the necessary certifications and other requirements. This letter informed Mr. Kliment that numerous unsuccessful attempts to obtain reduction of the balance owing from Huntington Chair had been made and a recent discussion with company officials disclosed that the company was not in a position to make any payments at that time and continued:

> ". . . As you know, . . . [defendant] has elected to discontinue coverage on this account after 1961. Since we are not willing to relieve you of this responsibility, we are now obligated to turn this account over to you.

> "We suggest that a direct contact be made immediately for the purpose of determining whether the account is collectible without suit. If after the ten day period following your first demand it becomes your judgment that suit is necessary, this is your authorization to proceed with what ever action you deem advisable. If you follow the procedure of suit, please keep us posted. As a matter of fact, we would like to have your opinion following the first demand. . . ."

Under date of November 17, plaintiff received a reply from Mr. Koch, to whom plaintiff's letter of November 9 had been referred by Mr. Kliment, advising that the matter had been discussed with the debtor and the debtor had originally promised checks in the amount of $1,000 on a monthly basis beginning December 11, but that defendant, unsatisfied with that arrangement, had secured the further promise that after three months the amount of the cheeks

would be increased to $2,000 each and submitted this proposal to plaintiff for its acceptance. The letter added:

> "Should you feel that a liquidation of this type along with the continued prospects of future business to your concern is to your advantage, we believe that should be accepted.

> "Should you wish immediate suit, we will forward this to our attorneys with instructions to institute suit immediately. . . ."

On November 22, Mr. Moser replied to this letter stating:

> ". . .

> "I have read your report on the above captioned debtor. All of your observations and conclusions . . . confirm my previous appraisals of this situation.

> "I quite agree that the immediate institution of a suit would not serve any particular purpose. The method of liquidation. . . for three monthly checks of $1000 commencing on December 11 and checks in the amount of $2000 each month thereafter until the balance is satisfied is entirely acceptable to us. Notwithstanding, there is one important proviso to which we must be mutually agreed. This arrangement does not relieve your responsibility under the terms of our insurance policy.

> "For further clarification, it is my understanding that . . . [defendant] is not willing to stay on the risk beyond 1961. If the acceptance of the payment arrangement as outlined above constitutes an action on our part to relieve your company of any further responsibility, we are not willing to accept your recommendation. However, if we have the assurance that the coverage will continue during the agreed liquidation period, we are entirely satisfied with this arrangement. . . ."

Defendant replied, under date of December 12, advising that it was definitely unwilling to extend any coverage beyond the current policy and that plaintiff was aware thereof as evidenced by his letter of August 7, adding ". . . I feel that I should add that I believe collection can be effected if you will permit our Service Department to continue with the settlement method on which we have

obtained agreement by the debtor." On December 19, Mr. Koch wrote plaintiff stating that the debtor was unable to meet the December 11 payment and, when a "strong demand" was made, an official stated that ". . . should they be pressed to any great degree they may consider Chapter XI of the Federal Bankruptcy Act." The letter continued ". . . before sending this to our attorneys, which would only entail additional costs to your firm, we believe it would be to your interest to review the possibilities of granting the debtor an additional extension until the first of March. . . ." and asked for plaintiff's comments and decision on this proposal. The policy period for establishing insolvency expired on December 31, 1961, and it is to be noted that one of the definitions of insolvency under the policy is where a voluntary or involuntary proceeding in bankruptcy shall have been instituted. Huntington Chair Corporation, the debtor, later went bankrupt and, although defendant at that time had collected three thousand dollars of the arrears, plaintiff lost twelve thousand dollars on the account. Plaintiff admitted accepting a draft from defendant in full settlement of all claims under the policy, the claim for Huntington Chair having been listed and disallowed by defendant, contending that it was his understanding that the claim had to be listed or else it was waived and that in order to obtain the money for undisputed claims he was forced to endorse the draft reciting the release.

Defendant's evidence, consisting of the testimony of company officials of defendant, most of whom have been mentioned above, was to the effect that defendant, in oral conversations, repeatedly urged plaintiff to turn the account over to defendant's service department in ample time for defendant to establish the debtor's insolvency, if that was the case, which plaintiff, because of a close personal relationship with the debtor's president, declined and neglected to do until November 9, 1961, a date too late to establish insolvency by means of suit under ordinary circumstances.

The jury returned a verdict for plaintiff in the amount sought and judgment was entered thereon, to which this

Court granted an appeal on October 5, 1964. Errors assigned in this Court relate mainly to the sufficiency of the evidence and the action of the trial court in giving plaintiff's instruction No. 2 which instructed the jury that if they believed from a preponderance of the evidence that the defendant had an interest to be served by the manner in which it handled the debtor's account and that the manner in which it handled the account resulted in a loss to plaintiff and a gain for the defendant then the jury should presume that there was fraud in the handling of the account and, unless that presumption was rebutted, the jury should find for the plaintiff. This instruction was objected to on the ground that there was no duty on the defendant to establish insolvency. An instruction given in behalf of defendant told the jury that fraud is never presumed but must be established by clear and preponderating evidence.

The following three questions arise upon the appellate consideration of this case. (1) What is the effect of the release signed by the plaintiff; was the Huntington Chair Corporation included therein? (2) Did the trial court commit reversible error by giving instruction No. 2 offered by the plaintiff as to presumption of fraud? (3) Was the evidence sufficient to take the case to the jury or should the judge have directed the jury to return a verdict for the defendant?

As to the first question, the trial court properly ruled that this case was to be distinguished from the other accounts which had been certified to the defendant and that although the Huntington Chair Corporation was included in the list which the plaintiff signed and received thereon a check for more than eight thousand dollars in purported full settlement of its claims it did not, upon the particular facts of this case, bind the plaintiff and forbid his prosecution of this action against the defendant.

The second question is more serious. This is the only instruction given in behalf of the plaintiff, over objection of the defendant:

"The Court instructs the jury that if it believes from a preponderance of the evidence that the de-

fendant had a personal interest to be served by the manner in which it handled the Huntington Chair Corporation account, and that the manner in which defendant handled the account resulted in a loss for the plaintiff and a gain for the defendant, then the jury shall presume that there was fraud in the handling of the account by the defendant and unless the jury believes that the defendant rebutted that presumption the jury shall award to the plaintiff damages in the sum of Ten Thousand Dollars ($10,000.00)."

This is defendant's instruction No. 1, given over the objection of the plaintiff:

"The court instructs the jury that fraud is never presumed, but that, on the contrary, people are presumed to act in good faith towards one another. The burden is always on one who charges fraud to establish it to the satisfaction of the jury by clear and preponderating evidence. And the court further instructs the jury that actual fraud means that the party charged with it was inspired by a deliberate fraudulent purpose to injure and deceive the plaintiff."

It is the unanimous view of this Court that it was reversible error for the judge of the trial court to give both of these instructions upon the grounds, first, that they are inconsistent, *Thomas* v. *Monongahela Valley Traction Co.,* 90 W. Va. 681, 112 S. E. 228; *Penix* v. *Grafton,* 86 W. Va. 278, 103 S. E. 106; and secondly, that plaintiff's instruction No. 2 does not properly state the law in this jurisdiction. In *Kuhn* v. *Chesapeake & Ohio Ry. Co.* (W. Va.), 118 F. 2d 400, the proper rule is stated in the opinion: "Fraud in the popular understanding of the term involves an element of moral turpitude or bad faith. It is never presumed, but must be clearly proved." Similarly, in *Bennett* v. *Neff,* 130 W. Va. 121, 42 S. E. 2d 793, Syl. Pt. 5, this Court held that "Fraud is never presumed and when alleged it must be established by clear and distinct proof." To the same effect are: *Campbell* v. *Campbell,* 146 W. Va. 1002, 124 S. E. 2d 345; *Brown* v. *Crozer Coal & Land Co.,* 144 W. Va. 296, 107 S. E. 2d 777; and cases cited therein. The following quotation from *Jones* v. *McComas,* 92 W. Va. 596, 115 S. E.

456, has never been questioned or overruled in subsequent decisions by this Court: "It is further conceded that the law applicable is that in order to prevail the plaintiff must bear the burden of showing by clear and decisive proof; (a) that the defendant made representations which were material, and that they were false; (b) that when he made them he knew they were false, or made them recklessly and as positive assertions, and not as mere opinions; (c) that he made them with the intention that they should be acted upon by plaintiff; (d) that plaintiff believed these representations and acted and relied upon them; (e) that plaintiff thereby suffered injury. Stated with the same import but with varying phrase, these are the rules and principles established by all authorities, including our own decisions. *Houston* v. *McNeer*, 40 W. Va. 365, 370 [22 S. E. 80]; *Wamsley* v. *Currence*, 25 W. Va. 543; *Southern Development Company* v. *Silvan*, 125 U. S. 247; 12 R. C. L. 240; 2 Pom. Eq. Jur. § 888."

Inasmuch as the judgment of the Circuit Court of Cabell County must be reversed for the giving of an erroneous and inconsistent instruction and the case remanded for a new trial, ordinarily it would not be necessary or advisable to consider the third point listed above, but inasmuch as the five judges of this Court are unanimous in holding that there was not sufficient evidence of "fraud or misrepresentation" for jury determination and that a verdict should have been directed at the end of all of the evidence upon defendant's motion, we have decided to pass upon that question believing that it might save time, attorneys' fees and costs to all of the parties if the plaintiff, upon another trial, cannot make a better case. This is the first syllabus point of *Butcher* v. *Stull*, 140 W. Va. 31, 82 S. E. 2d 278: "In determining whether the verdict of a jury is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned, must be considered, and those facts, which the jury might properly find under the evidence, assumed as true." If it then appears that there is insufficient evidence upon which to base a verdict for a party or that the verdict is against the clear preponderance

of the evidence such verdict must be set aside. *Lester v. Flanagan*, 145 W. Va. 166, 113 S. E. 2d 87; *State ex rel. Shatzer v. Freeport Coal Co.*, 144 W. Va. 178, 107 S. E. 2d 503. This quotation is from the opinion in *Bower v. Brannon*, 141 W. Va. 435, 90 S. E. 2d 342: ". . . it has been said that a person who comes to an appellate court with a verdict of a jury, approved by the trial court, is in the strongest position known to the law. However, a decision as to where the province of a jury ends, and that of a court begins, upon questions of fact, must be determined by the evidence in each case. Many well established principles are helpful. If there is no evidence to support the verdict of a jury, or if it is against the plain preponderance of conflicting evidence, it must be set aside. If reasonable men cannot disagree upon the facts, a matter of law arises for the court, but learned judges sometimes do not agree as to whether the facts in a particular case are such that reasonable men could reach only one conclusion therefrom. There is no rule or principle of law that can serve as a definite guide post to point the way to a specific line of demarcation in this nebulous realm where the rights, duties and responsibilities of a court and jury meet."

Since this Court holds that there was insufficient evidence in behalf of the plaintiff to take the case to the jury, further reference to the testimony, particularly that of Mr. Moser, who was the only witness in behalf of the plaintiff, should be made. It must be observed here that the defendant was serving the plaintiff in a dual capacity. It acted as a collection agency for the plaintiff and also was an insurer of plaintiff against loss due to the insolvency of a debtor. It is again emphasized that this action was predicated upon the theory that the defendant was guilty of fraud and misrepresentation in delaying establishing, and causing plaintiff to delay in establishing, the insolvency of the Huntington Chair Corporation, and that plaintiff thereby suffered a loss of ten thousand dollars. It is important also to emphasize the relationship which existed between the plaintiff and defendant. It was not of a fiduciary nature nor were they in the position of principal and agent until an account had actually been filed with the defendant

for collection. Mr. Moser, after admitting that he was, in effect, the Quality Bedding Company, was asked these two questions and made the following answers: "Q. Was the defendant willing to insure your account with Huntington Chair Corporation for future business during the year 1961? A. They were not. They weren't included in the new contract. Q. Why not? A. They did not want to take the risk, because they felt that Huntington Furniture Corporation was not worthy of—from a financial statement of them—carrying them with insurance." That witness stated further that his company continued to transact business with Huntington Chair Corporation during the year 1961 but only upon a cash before delivery basis. He was asked these questions and made the following answers: "Well, you sold them about—was it about $40,000 worth, or around there, on the account that you filed with the company? A. You mean in the full previous year? Q. Yes. A. In the full previous year that would probably be an approximate amount. I really don't know, I would have to check—I can supply you with those figures, but I don't have it at my fingertips right now."

H. N. Schillinger, an agent for the defendant, who sold the policy to plaintiff, testified that on March 1, 1961, he advised Moser that it would be necessary for him to file the Huntington Chair claim with the defendant in time to file an action, secure a judgment and "execute a writ of attachment" which would either be paid or the policy would cover his loss up to ten thousand dollars. This witness further stated that he discussed this matter with Moser on May 17, 1961, June 27, 1961, August 2, 1961, August 24, 1961, and on November 8, 1961, and that on the latter date for the first time Moser said "I am going to file the account", which Moser did a day or two later. Mr. Stone, also employed by, and a witness for, the defendant, testified to the same effect with regard to the March 1 meeting. However, it should be noted that, though Moser denied discussing this matter with Schillinger or any other official of the defendant until about November 7 or 8, 1961, upon direct examination he was asked this question and made the following answer: "Q. Had the defendant ever recom-

mended that you file suit against Huntington Chair Corporation during the year 1961? A. In answering that, Mr. Broh, I want to be clear on what we mean by the defendant. Now, the defendant—not the defendant's agent, is that correct? Because *Mr. Schillinger did advise us to turn this account over to them."* (Italics supplied.) As heretofore noted, on August 7, 1961, Mr. Moser wrote Mr. Schillinger that "We *hesitate to turn this account over to you* for collection because undue collection pressures might result in embarrassment to Huntington Furniture Corporation. In light of our insurance coverage, we agreed to carry them for a while on the $15,000 as they were not in a position to pick up any of the past due indebtedness." (Italics supplied.) Also as heretofore noted, on November 22, Mr. Moser, in a letter to one of the officials of the defendant stated that "I quite agree that the immediate institution of a suit would not serve any particular purpose. . . .", and thereafter stated that a monthly payment on the account commencing December 11, 1961, "is entirely acceptable to us". This letter was in answer to a letter from Mr. Kliment, an official of the defendant, in which Moser was informed, "Should you wish immediate suit, we will forward this to our attorneys with instructions to institute suit immediately. . . ."

There was no provision in this contract of insurance to the effect that the defendant would either collect the fifteen thousand dollars due plaintiff or pay the plaintiff ten thousand dollars, the amount of the insurance, sometime during the year 1961. It is clear from the policy of insurance that the defendant had no authority whatever to either attempt to collect the amount due plaintiff from Huntington Chair Corporation or to take legal action against that corporation unless and until authority therefor was given by Moser. It is clear also that the time element would not permit the defendant, after November 9, and prior to December 31, 1961, to institute an action, get judgment against Huntington Chair Corporation and have execution returned unsatisfied. As heretofore noted, however, Moser continued to suggest or agree to some other means of securing his indebtedness from Huntington Chair Corporation

than by legal action. Incidentally, the record shows that he did in the year 1962 receive three thousand dollars of the amount due from Huntington Chair Corporation and it was not until December 19, 1962, that this action was instituted.

It is the view of this Court that, assuming all of the evidence of Moser to be true, including the exhibits in the form of letters, it wholly fails to meet the requirements of the law in this jurisdiction that the defendant was guilty of fraud or misrepresentation and that the Quality Bedding Company suffered therefrom to the extent of ten thousand dollars. The judgment of the Circuit Court of Cabell County is reversed, the verdict of the jury is set aside, and the case is remanded to that court for a new trial.

*Reversed and remanded.*