THE STATE ROAD COMMISSION OF WEST VIRGINIA,

*Etc., et al.*

*v*

J. M. DARRAH, *et al.*

(No. 12581)

Submitted February 7, 1967. Decided March 14, 1967.

510

*Anthony G. Halkias,* for plaintiffs in error.

*W. Robert Hamlin, Philip A. Baer, Milton J. Ferguson,* for defendants in error.

CALHOUN, PRESIDENT:

This case, on appeal from a final judgment of the Circuit Court of Wayne County, involves an eminent domain proceeding instituted in that court by the State Road Commission and Burl A. Sawyers, State Road Commissioner, petitioners in that proceeding, hereafter referred to in this opinion as the condemners, for the purpose of acquiring, for public highway purposes, 10.51 acres of land belonging to J. M. Darrah and Mary Lou Darrah, husband and wife.

In the trial of the case, the jury returned a verdict in favor of the landowners for the sum of $32,700. After giving credit for $10,400 previously paid to the

landowners by the condemners, the trial court entered judgment in favor of the landowners for $22,300, plus interest and costs. From that judgment, the condemners have been granted the appeal to this Court.

Counsel for the condemners, by brief and oral argument, contends that the trial court erred in granting an instruction offered in behalf of the landowners and in admitting, and in not excluding, certain testimony given by Francis Peters, a witness for the landowners, in relation to damages resulting to the landowners from the taking. These two assignments of error present the primary questions for decision on this appeal.

Only two instructions were granted and read to the jury by the trial judge, one in behalf of the condemners, designated as State's Instruction No. 1, and one in behalf of the landowners, designated as Defendants' Instruction No. 1. State's Instruction No. 1 is rather long and comprehensive, dealing with various aspects of law, including burden of proof and credibility of witnesses. A portion of the instruction, stating principles for determining just compensation, is as follows:

"The Court instructs the jury that it is your duty to ascertain from the evidence in this case what will be a just compensation to the landowner for the real property taken and used for a right of way for the construction of the public road in question, and also what damages, if any, to the residue of said land, less any benefits that may be accrued to such residue by the construction of said highway.

"You are further instructed that just compensation means a fair and reasonable cash market value of said land actually taken, which is the price that property will bring if offered for sale by one who desires, but is not obligated to sell, and is purchased by one who is in no necessity of having it; that it is not a question of the value of the property to the State for use of a public road

or the necessity of the State to have such land, nor its necessity to the owner; nor can the value of said property be enhanced or increased by an unwillingness on the part of the landowner to sell it, or because the State may need the same for use of a public road.

"You are further instructed that the true measure of damages to the residue of the landowner's property by reason of the construction of the said highway in question, from all of the evidence in the case, is the difference between the market value of the property claimed to be damaged thereby immediately before and immediately after the improvement was made. * * *."

The correctness of State's Instruction No. 1 is not challenged on this appeal. In stating the proper measure of compensation, it conforms to prior decisions of this Court. *Strouds Creek and Muddlety Railroad Co. v. Herold,* 131 W. Va. 45, pt. 1 syl., 45 S. E. 2d 513, and *State by State Road Commission of West Virginia v. Snider,* 131 W. Va. 650, 656-57, 49 S. E. 2d 853, 857.

Defendants' Instruction No. 1 is as follows:

"The Court instructs the jury that when private property is taken by the State Road Commission under the exercise of the power of eminent domain, the law requires that just compensation be paid to the landowner. Just compensation means a fair and full equivalent for the loss sustained by the landowner. It would be unjust to the State if it were required to pay more than the loss sustained by the property owner and it would be unjust to the property owner if he should receive less than the full and fair equivalent of his loss.

"Just compensation is to be ascertained as of the date the State acquired the property, which in this case is November, 1963.

"Just compensation in this case includes two separate issues which you as jurors must determine: First, the fair market value of the land,

improvements, and fixtures actually taken by the State Road Commission; and second, the damages, if any, to the residue of the property resulting from the taking and the construction of the highway less any benefits to be derived by such residue from the construction of the highway.''

Counsel for the condemners objected to the granting of Defendants' Instruction No. 1, when it was offered, on the ground that it improperly defines just compensation as ''a fair and full equivalent for the loss sustained by the landowner.'' We are of the opinion that the objection was well taken. Inasmuch as the proper measure of damages had been fully set forth in State's Instruction No. 1, the language quoted above from the instruction offered by the landowners had a distinct tendency to confuse rather than to instruct or to enlighten the jury. *Hull v. Geary,* 71 W. Va. 490, pt. 2 syl., 76 S. E. 960. To the extent that the instruction defines a different measure of compensation from that stated in State's Instruction No. 1, it caused an inconsistency between the two instructions. It is error to give inconsistent instructions, even if one of them states the law correctly, inasmuch as the jury, in such circumstances, is confronted with the task of determining which principle of law to follow, and inasmuch as it is impossible for a court later to determine upon what legal principle the verdict is founded. *Quality Bedding Co., a W. Va. Corp. v. American Credit Indemnity Co. of N. Y., etc.,* 150 W. Va. 352, pt. 1 syl., 145 S. E. 2d 468; *Producers Coal Co. v. Mifflin Coal Mining Co.,* 82 W. Va. 311, pt. 3 syl., 95 S.E. 948; *Cobb v. Dunlevie,* 63 W. Va. 398, pt. 7 syl., 60 S. E. 384; *Ward v. Ward,* 47 W. Va. 766, pt. 3 syl., 35 S. E. 873; Instructions for Virginia and West Virginia (Second Edition), Volume 1, Section 28, page 70; 88 C. J. S., Trial, Section 339, page 897; 53 Am. Jur., Trial, Section 557, page 442.

Counsel for the condemners objected to the granting of Defendants' Instruction No. 1 for the additional reason that it stated that ''Just compensation in this

514

case includes two separate issues'' for the jury to decide, one the fair market value of the land taken and the other relating to damages to the residue, less benefits. It is not accurate to state that there were ''two separate issues'' to be decided by the jury. The jury had the duty to determine the single issue of just compensation, though just compensation in an eminent domain case involves different elements. See, Code, 1931, 54-2-9, 54-2-9a, and 54-2-10, as amended.

Because Defendants' Instruction No. 1 stated a measure of compensation in language different from that of the other instruction given, and because it advised the jury that there were ''two separate issues'' presented for jury determination, we are of the opinion that the instruction had the tendency to confuse and to mislead the jury. ''When a proper instruction is asked, and given, it is error to give another improper instruction which modifies it and nullifies its effect or obscures its meaning.'' *Ward v. Brown,* 53 W. Va. 227, pt. 6 syl., 44 S. E. 488. An instruction which is likely to confuse or to mislead the jury should be refused. *Maynard v. National Fire Insurance Co. of Hartford,* 147 W. Va. 539, 556, 129 S. E. 2d 443, 455; *Payne v. Kinder,* 147 W. Va. 352, pt. 19 syl., 127 S. E. 2d 726; *Hartley v. Crede,* 140 W. Va. 133, 150, 82 S. E. 2d 672, 682; *Wilson v. Edwards,* 138 W. Va. 613, pt. 8 syl., 77 S. E. 2d 164; *Parkersburg Industrial Co. v. Schultz,* 43 W. Va. 470, pt. 9 syl., 27 S. E. 255; Instructions for Virginia and West Virginia (Second Edition), Volume 1, Section 27, page 65; 88 C. J. S., Trial, Section 338, page 890; 53 Am. Jur., Trial, Section 555, page 440. The instruction, in its tendency to confuse or mislead the jury, differs from an instruction which is merely incomplete and which, if not a binding instruction, may be cured by one or more proper instructions which are given. *Nesbitt v. Flaccus,* 149 W. Va. 65, pt. 2 syl., 138 S. E. 2d 859; *Lawrence v. Nelson,* 145 W. Va. 134, pt. 7 syl., 113 S. E. 2d 241; *Frazier v. Grace Hospital, Inc.,* 117 W. Va. 330, pt. 1 syl., 185 S. E. 415; *Curfman v. Monongahela West*

*Penn Public Service Co.,* 113 W. Va. 85, pt. 5 syl., 166 S. E. 848.

There is a presumption that the complaining party has been prejudiced by the giving of an erroneous instruction over his objection and the judgment in question must be reversed on this ground, unless it clearly appears from the record that such party could not have been prejudiced by the giving of the instruction. *State v. McCoy,* 63 W. Va. 69, pt. 4 syl., 59 S. E. 758; .*Robinson v. Lowe,* 56 W. Va. 308, syl., 49 S. E. 250; *Ward v. Brown,* 53 W. Va. 227, pt. 18 syl., 44 S. E. 488; *Ward v. Ward,* 47 W. Va. 766, pt. 2 syl., 35 S. E. 873; *Osborne v. Francis,* 38 W. Va. 312, pt. 2 syl., 18 S. E. 591; *State v. Douglass,* 28 W. Va. 297, pt. 6 syl.; 5A. C. J. S., Appeal and Error, Section 1677(4), page 707, *et seq.;* 5 Am. Jur. 2d, Appeal and Error, Section 816, page 257.

The land taken in this proceeding, 10.51 acres, was a part of a tract of 13.4 acres. On this land, beginning in 1948, J. M. Darrah maintained and operated a place of business or plant known as Metal Craft Company. In 1962, there occurred a fire which destroyed or severly damaged a portion of the improvements which were used in the operation of the plant. The operation of the plant was interrupted by the fire and had not been resumed at the time of the taking of the 10.51 acres in November, 1963. The improvements on the land taken included a dam or lake, a septic tank and a water storage tank. Other improvements used in the operation of the plant, remaining after the fire, were on the residue of the 13.4 acres.

Francis Peters, a witness for the landowners, testified that, at the time of the trial, he was comptroller for E. W. Mootz Bakeries in Huntington, West Virginia. In 1948, he was employed by J. M. Darrah in connection with Metal Craft Company and, beginning in 1954, he became plant manager. Over objection of counsel for the condemners, he was permitted to testify concerning cost of improvements on the portion

of the land which was taken. From this he proceeded, by a process of reasoning which is obscure and difficult to follow, to testify that the value of the land taken was $99,000 and that damages to the residue were $16,800, aggregating the sum of $115,800. It does not appear from his testimony that he deducted from the inital cost of improvements any sum for depreciation or loss or damage caused by the fire. See *The Chesapeake and Ohio Railway Co. v. Johnson*, 134 W. Va. 619, 60 S. E. 2d 203; *The State Road Commission of West Virginia v. Milam*, 146 W. Va. 368, 120 S. E. 2d 254.

On cross-examination, Francis Peters testified that his past experience had been as a comptroller, in accounting and as plant manager; and that he had never bought or sold real estate or had any dealings in real estate, except the purchase of his home twenty years before. He stated that he assisted J. M. Darrah in 1955 in looking for a plant site. This was about eight years before the land in question was taken for highway purposes. "Compensation for land acquired in a condemnation proceeding should be ascertained and determined on the basis of its value at the time it is taken." *The State Road Commission of West Virginia v. Ferguson*, 148 W. Va. 742, pt. 3 syl., 137 S. E. 2d 206. On cross-examination, the witness gave the following additional testimony:

"Q. What is your opinion of the fair market value of the land taken, land and improvements being taken?

"A. Fair market value?

"Q. Yes.

"A. As you pointed out, I am not qualified to give you that information.

\*    \*    \*

"Q. What was the fair market value of the whole of the property before any of it was taken?

"A. I don't know what the fair market value was.

"Q. You don't know what the fair market value of the whole of the property was before any of it was taken?

"A. No. I could have arrived at it in the same manner as this, which is what the improvements were and what the potential was. Again, I am not an appraiser. You asked the fair market value. I can only give you what has been put into it and what I think it has increased the value of the property to.

＊　　＊　　＊

"Q. I take it also, Mr. Peters, not knowing the fair market value of the property before the State's taking, you also do not know the fair market value of the residue of the property as it exists today?

"A. No, I do not."

At the conclusion of the testimony of Francis Peters, counsel for the condemners moved the court to strike his testimony on the ground that his testimony disclosed that he was not familiar with the fair market value of the land in the area and was unable to give an opinion of "the fair market value either before or after the State's taking." The motion was overruled and the entire testimony of the witness was permitted to go to the jury.

We are of the opinion that the motion to strike the testimony should have been sustained and that the court erred in permitting the testimony to go to the jury. While the witness, on direct examination, expressed his opinion of the value of the land taken and of damage to the residue, it does not appear that, in his opinion of damage to the residue, he took into consideration the question of benefits, if any, resulting to the residue by reason of the highway construction. On cross-examination, after giving his opinion of the

value of the land taken and damages to the residue, he admitted that he was not familiar with fair market values of real estate in the area.

The general rule is that opinion evidence, concerning a matter in relation to which the jurors are as competent to form an accurate opinion as the witness, is not admissible. *Reall v. Deiriggi,* 127 W. Va. 662, pt. 1 syl., 34 S. E. 2d 253; *Collar v. McMullin,* 107 W. Va. 440, pt. 3 syl., 148 S. E. 496; *Lively v. Virginian Railway Co.,* 104 W. Va. 335, pt. 4 syl., 140 S. E. 51; *Hancock v. Snider,* 101 W. Va. 535, pt. 5 syl., 133 S. E. 131; *Cavender v. Cline Ice Cream Co.,* 101 W. Va. 3, pt. 1 syl., 131 S. E. 862; *Barna v. Gleason Coal & Coke Co.,* 83 W. Va. 216, pt. 2 syl., 98 S. E. 158. In an eminent domain proceeding, the testimony of a witness as to land values is admissible if he is to some extent qualified, though his qualifications in that respect are meager *The State Road Commission v. Ferguson,* 148 W. Va. 311, pt. 1 syl., 134 S. E. 2d 900; *Tennessee Gas Transmission Co. v. Fox,* 134 W. Va. 106, pt. 1 syl., 58 S. E. 2d 584. ''Without qualifying in some degree to do so a witness should not be permitted to give his opinion as to value or damages in a proceeding to take or damage land for public purposes.'' *Chesapeake & Ohio Railway Co. v. Johnson,* 137 W. Va. 19, pt. 5 syl., 69 S. E. 2d 393. In line with general principles relating to opinion evidence, a witness may be permitted to give his opinion of land values if he has some peculiar qualification or more knowledge than jurors are ordinarily supposed to possess. *Brown v. Crozer Coal & Land Co.,* 144 W. Va. 296, pt. 9 syl., 107 S. E. 2d 777; *Toppins v. Oshel,* 141 W. Va. 152, 89 S. E. 2d 359; *Stenger v. Hope Natural Gas Co.,* 139 W. Va. 549, pt. 7 syl., 80 S. E. 2d 889; *Chesapeake & Ohio Railway Co. v. Allen,* 111 W. Va. 481, 482, 163 S. E. 22, 23. See also *Guyandotte Valley Railway Co. v. Buskirk,* 57 W. Va. 417, pt. 5 syl., 50 S. E. 521.

Francis Peters did not live in or own property in the community in which the land is situated and, by his own admission, he had no knowledge of real estate values in that area. The record discloses that the jury took a view of the premises. In brief, the testimony fails to disclose that the witness was more competent than an average juror to form an accurate opinion of the fair market value of the land taken or of damages to the residue. He was, therefore, not a competent witness to testify concerning such matters.

For reasons stated in this opinion, the judgment of the Circuit Court of Wayne County is reversed, the verdict is set aside, and a new trial is awarded to the condemners.

*Judgment reversed;*
*verdict set aside;*
*new trial awarded.*